Victor J. Herb, Appellant, v. Norman B. Pitcairn and Frank C. Nicodemus, Jr., Receivers for the Wabash Railway Company, Appellees.

584

Opinion filed June 14, 1940.  Rehearing denied and opinion modified October 23, 1940.

MERRITT U. HAYDEN, of Hillsboro, MARK D. EAGLETON, of St. Louis, and McGLYNN & McGLYNN, of East St. Louis, for appellant.

WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellees.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment *non obstante veredicto* rendered by the city court of Granite City, Illinois, in favor of Norman B. Pitcairn and Frank C. Nicodemus, Jr., receivers for the Wabash Railway Company, a corporation, appellees (hereinafter called defendants), after a jury had returned a verdict for appellant, Victor J. Herb (hereinafter called plaintiff), in the sum of $30,000.

The action was instituted by plaintiff for injuries sustained by him (consisting chiefly of the loss of his left foot and a part of his left leg) while plaintiff was in the performance of his duties as a member of a switching crew in the employ of defendants, on November 23, 1936. His injuries were admittedly serious and permanent. The action was predicated on the alleged violation of defendants of certain provisions of the Federal Safety Appliance Act which, it was contended, prohibited defendants from hauling or using any freight car not equipped with an efficient hand brake, and it was contended, coincidently, that both plaintiff and defendants were, at the time of the accident, engaged in interstate commerce and transportation, which subjected them to the Act of Congress commonly known as the Federal Employers' Liability Act.

The evidence in the case disclosed that the plaintiff was 49 years of age, and had been employed as a switchman by the defendants for 24 years. At the time of plaintiff's injury he was engaged in switching operations, as a member of a switching crew of defendants, on the premises of the Staley Manufacturing Company in Decatur, Illinois. All of the switching operations of the Staley Company were conducted by the defendants, through their employees, and cars which were loaded by

the Staley Company were customarily delivered by the defendants to the carriers to whom such cars were assigned for transportation and delivery to points of destination. One of the railroads to which deliveries were regularly made was the Illinois Central Railroad Company.

It was shown that shortly after noon of the day upon which the accident occurred, the plaintiff, together with other employees of the defendants, was engaged in switching operations in the Staley Company yards. Plaintiff had noticed four freight cars standing on a certain track, including one Illinois Central and one Pennsylvania freight car, upon which he noted that the brakes had been set. The engine of the unit with which plaintiff was working, was coupled to four additional cars, one of which was designated and referred to as a "U. P." car, which had just been taken out of a track adjacent to one of the Staley Company buildings where such car had been loaded with miscellaneous feed for a consignee located in the city of Kiel, Wisconsin. Such four cars, including the U. P. car, were coupled by plaintiff to the four-car unit, which included the two cars upon which the plaintiff had noted that the brakes had been set as hereinbefore stated. After the coupling had been completed, Plaintiff gave the proper signal to the engineer to move the eight-car train westwardly, and he then climbed up the ladder on the east end of the U. P. car, which was east of the engine, and walked westwardly over the top of the cars for the purpose of releasing the brakes on the Illinois Central and Pennsylvania cars. Plaintiff testified that this was done in the customary and regular method of railroading. When plaintiff reached the end of the I. C. car where he had gone for the purpose of releasing the brake, he testified that he noted that the "dog" which was designed to prevent the brake from spinning, was meshed in the cog wheel and the brake was set. Plaintiff testified that he got onto the ladder at the west end of such I. C. car,

climbed down the ladder several steps, then put his right foot on the brake platform preparatory to stepping to the brake platform for the purpose of releasing that brake. In stepping from the ladder to the brake platform, he placed his right foot on the brake platform and his right hand on the brake wheel, which he testified was customarily done by switchmen to accomplish such operations. While plaintiff was so stepping onto the brake platform, he testified, the brake wheel spun violently to the left, throwing the plaintiff from the platform to the ground where his left foot was run over by the wheels of the train. He testified that he did not touch the ''dog'' or rachet, nor pull on the brake wheel in any manner so as to move it, and that he did nothing to cause the brake wheel to spin. All witnesses who testified as to operations of brakes of the character involved in the instant case, stated that a brake of that type, in efficient working condition, would not spin under those circumstances.

As a result of the injuries which plaintiff sustained he was confined to a hospital for 16 weeks and 4 days, and was operated on for amputation of his left leg about 2 or 3 inches above the left ankle. He made periodical visits to the hospital after that for treatment for about 6 weeks, and was thereafter required to undergo a second operation when more bone was removed. He testified that he suffered continuous pain from the date of the injury until the time of the trial of this case. Plaintiff had previously never done any other type of work, except manual labor, and testified that he has been unable to earn any money since the date of the injury. The medical testimony in the case indicates that plaintiff will continue to suffer pain throughout his lifetime, and has been permanently disabled from performing manual labor, as the result of the injuries sustained.

The major issue upon which the case turned in the court below was, whether or not plaintiff was, at the

time of the injury, engaged in interstate commerce and transportation, and whether or not the only car to which reference was made for the purpose of establishing the interstate character of such work, i.e., the U. P. car, was actually an "interstate car." There was some conflict of testimony on this point.

Plaintiff's evidence established that the U. P. car had been loaded with what was designated as a "broken lot" shipment of feed, which the Staley Company did not customarily load and keep in the yards, but immediately sent out to the customer. The evidence disclosed that this particular car had been loaded for a consignee in Kiel, Wisconsin, pursuant to a definite order from such consignee. The shipping clerk of the Staley Company testified that after the car had been loaded, he had issued the seals for the car and had given the yard master orders to take the car out. By that, he testified that he meant that the car was ready to go to the Illinois Central Railroad (to which road the car was to be delivered for transshipping to Wisconsin) on an "O.K." Plaintiff testified that the yard master then told the foreman of the switching crew in which plaintiff was working, in plaintiff's presence and prior to his injury, that the U. P. car was to be taken out of the particular track upon which it was then located, and that it "went to the I. C.," meaning the Illinois Central Railroad Company. The foreman denied that such statement was made in the presence of plaintiff and prior to the injury, but stated that he did not have any disposition of such car until after plaintiff was injured, and that he was advised by the yard master as to what was to be done with the car after plaintiff had already been injured, and also, that he did not receive the bill of lading until after the time of such injury. A switching list, which was in the possession of the foreman, which referred to the particular U. P. car, contained the following with reference to such car: U. P. 78865 ic. ~~Feed Hold~~ I. C. The foreman testified that

the words, "Feed Hold" were stricken by him after the plaintiff was injured; that the "ic.," shown in small letters immediately before the words "Feed Hold," were likewise placed there by him after the plaintiff was injured. It was not established who placed the large letters "I. C." on the list, nor when such letters were placed there.

The evidence disclosed that the "U. P." car in the eight-car train was moved into another track to the west where a second Wabash crew was to pick it up from such track, where the crew in which the plaintiff was working had placed it, and then deliver such car to the Illinois Central Railroad. Plaintiff testified that the reason for moving the U. P. car from the track where it was first coupled into the eight-car train, to the other track, was so that it could be delivered to the Illinois Central, and that another Wabash crew would act to complete the movement of such car to the Illinois Central. At the time that plaintiff was injured, the train included such U. P. car. The evidence likewise disclosed that such car went out of Decatur on the Illinois Central Railroad on its journey toward its destination in Kiel, Wisconsin, the evening of the same day on which plaintiff was injured.

During the trial, at the close of plaintiff's evidence, defendants moved the court for a directed verdict. Judgment on such motion was reserved, and judgment on a similar motion filed at the close of all the evidence was, likewise, reserved by the court. After the case had been considered by the jury and a verdict returned in favor of plaintiff and against defendants in the sum of $30,000, the motions were considered by the court and argued on November 30, 1938. On October 13, 1939, the trial court sustained the motion and entered an order finding that since the verdict had in the meantime been returned, he would and did render judgment *non obstante veredicto* in favor of defendants.

Plaintiff relies for reversal upon the contention that, in allowing the motion and entering the judgment *non*

*obstante veredicto,* and in deciding, as a matter of law, that at the time of plaintiff's injuries plaintiff and defendants were not engaged in interstate commerce or transportation, the court below was in error in that it was assuming to decide a question of fact which, under the law as declared by the federal courts, was exclusively one for the jury to decide in actions tried before a jury, and that the court misconceived the probative effect of the evidence presented on behalf of the defendants under the decisions and interpretations set forth in the cases decided by the Supreme Court of the United States.

A motion for a directed verdict and for judgment notwithstanding the verdict, presents to the trial court the question of law, whether from the evidence in favor of the plaintiff, and when considered to be true, together with the inferences that may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff (*Russell v. Richardson,* 302 Ill. App. 589; *Bituminous Casualty Corp. v. City of Harrisburg,* 303 Ill. App. 75). It is not the function of a trial judge (as stated in *Mirich v. T. J. Forschner Contracting Co.,* 312 Ill. 343) to weigh the evidence and determine where the preponderance lies, but the court is strictly limited to a determination of whether there is, or is not, any evidence legally tending to prove the fact affirmed—evidence from which, if believed (and not considering any contradictory evidence), it might reasonably be inferred the fact affirmed existed.

It is, likewise, well-established that the law to be applied to the facts of a case brought under the Acts of Congress involved in the instant case, that is, the Federal Safety Appliance Act and Federal Employers' Liability Act, is the law as declared by the Supreme Court of the United States, and by other federal courts of authority (*Second Employers' Liability Cases,* 223 U. S. 1, 56 L. Ed. 327, 32 Sup. Ct. 169; *Seaboard Air Line Railway Co. v. Horton,* 233 U. S. 492, 58 L. Ed. 1062, 34 Sup. Ct. 635). It has likewise been established that

the Federal Safety Appliance Act imposes an absolute liability upon the carrier, and that the only question involved in a case of this character is whether the hand brake was inefficient, and whether such lack of efficiency was the proximate cause of the injury. The element of "negligence" is not in any way involved (*Brady v. Terminal Railroad Ass'n,* 303 U. S. 10, 82 L. Ed. 614, 58 Sup. Ct. 426). The violation of such requirement may be inferred from the failure of such brakes to function (*Anderson v. Chesapeake & Ohio Ry. Co.,* 352 Ill. 561).

The court below, in a lengthy, and apparently carefully considered opinion, concluded that the movement of the U. P. car involved in the instant case was not within the field termed "interstate"; that the switching operation was not a "preparatory movement" in aid of interstate transportation; and that the work being done to facilitate the movement, and the movement itself, were not a "necessary incident" to interstate transportation. It was the conclusion of the court below, and it is the contention of counsel for defendants, that the movement of such car, and the other cars of the train, was simply a "yard movement" and merely an isolated incident to interstate transportation and remotely connected therewith, and that it had no general relation to interstate commerce. It was expressed that "some continuity of movement is essential" to bring it within the rules relating to interstate transportation. It is also contended that the dominant purpose of the movement was not to facilitate interstate commerce. We cannot agree with such contentions, nor with the conclusion of the court below in this matter.

It is true that a railroad employee to recover under the provisions of the Federal Act, must be engaged in interstate commerce at the moment of the injury (*Chicago, B. & Q. R. R. Co. v. Harrington,* 241 U. S. 177, 60 L. Ed. 941, 36 Sup. Ct. 517; *Illinois Central R. R. Co. v. Behrens,* 233 U. S. 473, 58 L. Ed. 1051, 34 Sup. Ct. 231). Under the facts in the record in the instant case, it

was shown that at the very moment of plaintiff's injury he was a member of a crew which was moving the U. P. car, which was destined to Kiel, Wisconsin. It was unquestionably shown that the U. P. car, prior to its being pulled from the track adjacent to the Staley warehouse, had been loaded with freight destined for shipment to Kiel, Wisconsin; that it had been sealed and billed in accordance therewith. It was likewise established that the defendants were to deliver such car to the connecting carrier, the Illinois Central Railroad at Decatur, Illinois, for transportation to its point of destination. The only question is whether or not plaintiff's crew, in picking up the U. P. car from the siding adjacent to the Staley warehouse and moving it to another switch track where it was to be picked up by another crew to be delivered to the Illinois Central Railroad, was engaged in interstate transportation. It is the conclusion of this court that the facts adequately disclosed that the crew was so engaged, and that the plaintiff, at the time of the injury, was engaged in interstate transportation so as to bring him within the purview of the Acts of Congress referred to.

The plaintiff testified directly that his foreman was advised in his presence that the "U. P. car" was to go to the "I. C.," meaning that the U. P. car was to go to the Illinois Central Railroad. The Staley Company's shipping clerk testified that he had given orders to take the car out because it was loaded and ready to go out, by which he stated he meant it was "ready to go out to the I. C. railroad on an O.K." Further testimony of the plaintiff was to the effect that the reason for moving the U. P. car from the Staley Company's warehouse was so that it would be delivered to the Illinois Central Railroad, and that the U. P. car was to be "switched out" for the Illinois Central, first, through the crew with which plaintiff was working which switched the car into another track, and then through another crew which picked the car up on such track and delivered it

to the Illinois Central Railroad. Many cases in the Supreme Court have established the general principles relating to interstate transportation which have moved this court to its conclusion (*Philadelphia & Reading R. Co. v. Hancock,* 253 U. S. 284, 64 L. Ed. 907, 40 Sup. Ct. 512; *North Carolina Railroad Co. v. Zachary,* 232 U. S. 248, 58 L. Ed. 591, 34 Sup. Ct. 305; *New York Cent. & H. R. R. Co. v. Carr,* 238 U. S. 260, 59 L. Ed. 1298, 35 Sup. Ct. 780; *Shanks v. Delaware, L. & W. R. Co.,* 239 U. S. 556, 60 L. Ed. 436, 36 Sup. Ct. 188; *Texas & Pac. Ry. Co. v. Rigsby,* 241 U. S. 33, 60 L. Ed. 874, 36 Sup. Ct. 482). While no precise precedent has been directed to the attention of this court, and while this court has been unable to discover a case similar in all respects to the present case, we are unable to see any reasonable basis for the conclusion of the court below that interstate transportation had not begun at the time of plaintiff's injury.

Transportation begins when merchandise is placed in the possession of a carrier, and the essential character of the commerce (not the accident of local, or through bills of lading), determines whether it is interstate in its character (*Railroad Commission v. Texas & Pacific Ry. Co.,* 229 U. S. 336, 57 L. Ed. 1215, 33 Sup. Ct. 837; *Texas & New Orleans R. Co. v. Sabine Tram Co.,* 227 U. S. 111, 57 L. Ed. 442, 33 Sup. Ct. 229.)

In the opinion of this court the interstate character of the U. P. car began when it was loaded and designated for a consignee at Kiel, Wisconsin, and had begun to move for the purpose of being put into a train of cars, or attached to an engine that would carry it forward on its journey. The U. P. car, in company with the other seven cars in the train upon which plaintiff was injured, was being moved from the Staley warehouse along the first step of its interstate journey. This court is unable to perceive a sound reason, or any precedent which determines that a "continuity" of movement is requisite to characterize a movement as being "interstate." Instances may readily be cited of many and

varied switching movements which may be required in facilitating the journey in interstate commerce of a car or train, and the fact of continuity of movement has apparently never been determined as an essential requisite to the determination of the interstate character of commerce (*Minneapolis, St. P. & S. Ste. M. R. Co. v. Goneau,* 269 U. S. 406, 70 L. Ed. 335, 46 Sup. Ct. 129).

In our opinion the fact that the U. P. car was not being taken directly to the Illinois Central Railroad at the particular moment when plaintiff was injured, is wholly immaterial. The purpose of the movement into the track was to place the car in an appropriate position for another crew to make delivery to the Illinois Central Railroad. The original step was taken by the crew with which plaintiff worked, and the final step in the delivery of such car to the Illinois Central Railroad was taken by the other crew. The ultimate object of all of such movements was to deliver such car to the Illinois Central Railroad for delivery to Kiel, Wisconsin. The destination was fixed. The interstate trip had begun at the time the car was moved away from the Staley Company warehouse, if the testimony of the plaintiff was to be believed.

As previously indicated in this opinion, neither the court below in considering a motion for a directed verdict, nor this court on appeal, may weigh the evidence and determine upon which side the preponderance lies. If there is substantial evidence upon which the verdict of the jury could be founded, as was true in the instant case, the court below had no right to enter judgment *non obstante veredicto,* and the entry of such judgment was clearly erroneous.

It is contended by the defendants herein that in the event this court concludes that the court below erred in entering the judgment notwithstanding the verdict, this cause should be remanded for new trial.

Under the provisions of section 68c of the Illinois Civil Practice Act (§ 192c, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.068]), it is provided

that if, in the opinion of the Appellate Court, the trial court committed error in entering judgment notwithstanding the verdict, such court shall reverse such order and judgment and shall order or enter judgment in accordance with the verdict of the jury, "unless it shall appear that there was error in the case that would have entitled the party in whose favor judgment notwithstanding the verdict was entered, to a new trial if such judgment had not been entered by the trial court, in which case a new trial shall be ordered."

It is contended by the plaintiff that pursuant to the principles announced in *Kauders v. Equitable Life Assur. Society,* 299 Ill. App. 152, the failure to file a motion for new trial precludes the consideration of any grounds which might have been raised in such motion, and that all right to a new trial is waived by the failure to file such motion in the lower court.

While such conclusion has been suggested by some interpreters of the Civil Practice Act, and in the case of *Rose v. Meyer,* 303 Ill. App. 365, we do not believe that the *Kauders* case necessarily requires such conclusion, nor do we believe that such rule either expresses the legislative intent of the section referred to, or is a desirable rule of practice. It will be noted that the section contains a proviso which specifically excepts cases where error would have entitled the party to a new trial, and contains a provision to the effect that in such case a new trial shall be ordered. There is no provision therein contained which expressly requires that a motion for new trial be filed after the granting of the motion for, or entering of the judgment notwithstanding the verdict. The *Kauders* case involved a situation where a plaintiff had appealed to the Appellate Court where the judgment had been reversed and the cause had been remanded with directions to enter a judgment upon the verdict. After the mandate had been filed in the trial court, judgment was entered on the verdict in plain-

tiff's favor and against the defendant, as directed by the Appellate Court. It was not until 7 days thereafter that defendant filed its motion for new trial, and such motion was thereafter stricken on application of plaintiff, and the defendant thereupon appealed to the Appellate Court from the order of court striking the motion for new trial filed under such circumstances. The court in such case simply concluded that the failure of the defendant to file a motion for new trial, or to urge that he was entitled to a new trial at the time that the appeal was first considered by the court, was fatal, and that not having done so, the error was waived and he could not now be heard to complain. The court therein indicated that it is the policy of courts of appeal not to review cases piecemeal, and the implication is justified that the court would have considered grounds for a new trial if presented at the time such case was first reviewed by the Appellate Court.

We believe that such conclusion is more accurate and desirable than the one that apparently has been reached in *Rose v. Meyer, supra.* If the precedent of that case is to be followed it would mean that a motion for new trial may be filed after the entry of judgment upon reversal, where a judgment notwithstanding the verdict has been entered, and that a second appeal is taken to the Appellate Court for another review in the same case. Thus, in effect, the court in *Rose v. Meyer* is telling the parties to do what the court in the *Kauders* case said is ineffectual and improper. The better rule, in the judgment of this court, is one which adheres to the principle obviously intended by the court in the *Kauders* case, to the effect that grounds upon which a new trial could be requested must be urged in the court on appeal; or through a motion filed in the trial court prior to appeal, or any errors of such character should be considered waived. Any other rule would, in the opinion of this court, be illogical and not in accordance with the statutory intent as expressed in the Civil Prac-

tice Act. It is obvious that if a court has reserved decision on a motion for directed verdict, and thereafter sustains such motion and enters a judgment notwithstanding the verdict, it would be futile and absurd to require that the defendant thereupon file a motion for new trial within 10 days after a verdict has been entered in his favor by the court. He should, as provided by statute, be permitted to assign errors on appeal (which he would have urged in such motion for new trial had the verdict been entered against him). The parties, under such rule, will have a complete review of the cause on one appeal, and will not be required to pursue two appeals in the same case. We are, accordingly, giving consideration to the alleged errors relied upon by the defendants as grounds for granting a new trial.

It is first contended by defendants that the verdict of the jury was manifestly against the weight of the evidence in that the evidence proved that plaintiff was not engaged in interstate commerce at the time of the injury, and also, to the effect that the evidence established that the brakes on the car from which plaintiff fell, were efficient and in proper repair.

There was substantial evidence, as we have indicated in this opinion, that plaintiff was engaged in interstate commerce, or work so closely related thereto as to be practically a part thereof, at the time he was injured, and we cannot, therefore, say that the verdict of the jury is contrary to the manifest weight of the evidence.

On the issue of the violation of the Safety Appliance Act and the alleged efficiency of the hand brake, as was determined in the *Chesapeake & O. R. Co. v. Gowen*, 65 F. (2d) 260, the actual inefficient operation of the appliance may be shown (as was true in the instant case), and the fact that it operated efficiently thereafter at the time defendants' witnesses undertook to test it, does not destroy the effect of the proof produced by plaintiff (*Spotts v. Baltimore & O. R. Co.*, 102 F. (2d) 160). As stated in the case of *Spotts v. Baltimore &*

*O. R. Co., supra,* at 162, ''Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the appliance.''

It is further contended that the court erred in giving the jury an instruction which specified that it was defendants' ''positive, absolute, unqualified, and continuous duty'' to have the car equipped with an efficient hand brake. Such instruction correctly stated the law, and an instruction of similar character has been previously approved in this court (*Stott v. Thompson,* 294 Ill. App. 450). It is likewise contended that plaintiff's instruction was erroneous in failing to define what is meant by ''interstate commerce.'' We do not believe that the jury could have been misled by such failure to define interstate commerce, particularly in view of the recital in such instruction of the consignment to the State of Wisconsin and beyond the State of Illinois, which immediately preceded the reference to interstate commerce in such instruction. The expression is likewise of such clearly understandable character that it is not necessary to define such ultimately issuable fact, under the facts and circumstances in the instant case (*McNatt v. Wabash R. Co.,* 341 Mo. 516). We must, therefore, conclude that there was no reversible error in the giving of instructions on behalf of the plaintiff.

Defendants likewise contend that the court erred in admitting improper evidence on behalf of plaintiff, consisting of certain exhibits and testimony of witnesses referring to the destination and contents of the U. P. car. Such testimony and exhibits, in the opinion of this court, were properly admitted in evidence, under the facts and circumstances which obtained at the time and with relation to the express purpose for which the exhibits were offered, and this court feels that there was no reversible error in the admission of any such ex-

hibits, nor of any testimony with reference to which complaint is made by defendants. It is specifically contended by defendants that the plaintiff should not have been permitted to testify and state whether he did, or did not, do anything to cause the hand brake in question to spin around and operate as it did at the time he was thrown to the ground. Such testimony was clearly proper, and in the opinion of this court, was testimony as to facts which were learned by plaintiff from observation and experience. If such testimony is characterized as opinion testimony, the experience of the plaintiff, as testified to by him (24 years as a switchman and brakeman), was competent to qualify him as an expert on matters to which such testimony related. As a matter of fact, the record discloses that similar testimony on behalf of plaintiff was offered and introduced without objection on part of defendants, so that no prejudice could have resulted from the introduction of such testimony.

A contention was made, but not argued, that the verdict was excessive, and the result of prejudice and passion. Plaintiff points out that this court in *Stott v. Thompson, supra,* has stated that alleged excessiveness of a verdict in an action under the Federal Employers' Liability Act is not for the consideration of an Appellate Court. This court would not be disposed to disturb the verdict in any event, under the facts and circumstances before it, and in view of the precedents in such cases.

This court must, therefore, conclude that there are no grounds upon which it would be justified in remanding for the purpose of a new trial. The court must likewise conclude that the action of the trial judge in rendering judgment in favor of defendants *non obstante veredicto* was erroneous. It is, therefore, the judgment of this court that such action be reversed, and that the judgment *non obstante veredicto* be set aside, and that judgment be entered on the verdict in favor of plaintiff.

This court, accordingly, will set such judgment *non obstante veredicto* aside, and enter judgment on the verdict in this court in the sum of $30,000 in favor of the plaintiff, and against the defendants, together with costs.

*Reversed and judgment entered here.*