[L. A. No. 18379. In Bank. Dec. 2, 1942.]

GEORGE W. NEWKIRK, Respondent, v. LOS ANGELES JUNCTION RAILWAY COMPANY (a Corporation), Appellant.

Lyndol L. Young for Appellant.

Clifton Hildebrand, James E. Martin, James A. Myers and Goodman & Brownstone for Respondent.

CARTER, J.—Plaintiff, an employee of the defendant Railway Company, brought this action under the Federal Employers' Liability Act (45 U.S.C.A. 51) and the Safety Appliance Act (45 U.S.C.A. 11), to recover damages for personal injuries suffered by him as the result of an alleged inefficient hand brake on a car operated by defendant.

Plaintiff was employed by defendant as a switchman and was injured while engaged in the performance of his duties at about 5:30 a. m., on December 14, 1938; it was dark and there had been a light rain. Defendant, a California railway corporation, is a common carrier by railroad handling both interstate and intrastate shipments, its business consisting chiefly

of the terminal distribution and collection of freight cars for other railroads. It does not do business with the general public. The car in question, a tanker, containing cottonseed oil, originated at Phoenix, Arizona, the point of shipment. Its destination was Swift & Company at Vernon, California. The tanker, together with other cars from out of the State, was turned over to defendant by other carriers to be delivered by defendant over its system to their ultimate point of destination in Vernon; the tanker in question was received by defendant from the Southern Pacific Company. Plaintiff was working on the train as switchman. The plan of operation of defendant in moving the various cars to their respective destinations was to place some cars on what is designated its flood track to be left there until other cars had been delivered, whereupon the engine would return, pick up the cars on the flood track and deliver them. After the cars had been delivered to defendant at its system of tracks they were hauled several miles to a point where its main track intersected the flood track. When on the flood track the tanker was about two miles from its ultimate destination, the Swift & Company plant. The tanker was the last car in the train and after being moved past the switch from the main track to the flood track, it was ''kicked'' onto the flood track, an operation involving the uncoupling of the tanker from the train leaving it free to roll onto and down the flood track by its own momentum. Plaintiff participated in those operations and stayed with the tanker in order to apply the hand brake and bring it to a stop. The hand brake consists of a perpendicular shaft extending above and below the top surface of the car at the end thereof; underneath the car it is connected with a mechanism by which, when the shaft is rotated, it tightens or releases the brake shoes. Attached to the top of the shaft is a wheel which is turned in applying or releasing the brake. Attached to the rod and at the top surface of the car is a ratchet the rotation of which is controlled by a pawl. When the wheel is turned to apply the brake the pawl engages the ratchet and holds the brake in the applied position until released. Plaintiff, carrying a lighted lantern walked on the running board on the tanker to the brake and set it. While resting his right hand on the wheel, he reached for the hand rail with his left, thereupon in his language ''The brake flew off and the brake goes around that way and by having hold of it,

it throwed me right around, turned me plumb around and I lit in the middle of the track. Q. In other words, when it flew off the wheel turned counter clock-ways, did it? A. Yes. Q. And threw you off between the rails? A. Yes." As the result of the fall plaintiff's hand fell on the track and several fingers were severed by the wheel of the tanker. There is evidence of inspection of the brake by defendant and the Southern Pacific Company both before and after the accident and it was found to be in a safe and proper condition according to the testimony of the inspectors employed by these companies.

The rules pertinent to this case, with respect to the liability of carriers falling within the terms of the Federal Employers' Liability Act (*supra*) and the Safety Appliance Act (*supra*) are well established. The Safety Appliance Act requires that cars be equipped with "efficient hand brakes." (45 U.S.C.A., § 11.) The defenses of assumption of risk and contributory negligence are unavailable where that requirement has not been met. (45 U.S.C.A., §§ 7, 53, 54.) The carrier's liability for injuries proximately caused by a violation of that requirement is absolute and is not founded upon negligence of the carrier. (45 U.S.C.A., § 11; *Brady* v. *Terminal R. R. Assn.*, 303 U.S. 10 [58 S.Ct. 426, 82 L.Ed. 614].)

The sole issues are therefore whether the hand brake was efficient, and if not, whether its inefficiency was the proximate cause of the injuries.

It is asserted that there is no substantial evidence that the hand brake was not efficient, and therefore there was no violation of the Safety Appliance Act; that the only credible evidence shows that it was efficient and that plaintiff's fall was caused by his slipping. Plaintiff testified that he set the brake tightly in the customary and usual manner and the pawl was firmly set in the ratchet preventing the shaft and top wheel from revolving and releasing the brake. It held until he reached for the hand rail with his left hand, his right hand resting on the top wheel, then it let go. The top wheel spun around throwing him from the car. The car was moving during that time. Thus, the situation was that the hand brake failed to properly operate, failed to hold. From those circumstances alone the jury was justified in inferring that the hand brake was not efficient. Under the Safety Appliance Act, the particular defect in the appliance causing the injury

need not be pointed out by the evidence. Evidence that the brake is used in the normal and usual manner and fails to work is sufficient evidence of the inefficiency of the brake to make the issue one for the jury. (*Hosman* v. *Southern Pacific Co.*, 28 Cal.App.2d 621 [83 P.2d 88], certiorari denied 306 U.S. 656 [59 S.Ct. 645, 83 L.Ed. 1054]; *Karberg* v. *Southern Pacific Co.*, 10 Cal.App.2d 234 [52 P.2d 285]; *Wild* v. *Pitcairn*, 347 Mo. 915 [149 S.W.2d 800]; *Spotts* v. *Baltimore & O. R. Co.*, 102 F.2d 160, certiorari denied 307 U.S. 641 [59 S.Ct. 1039, 83 L.Ed. 1522]; *Didinger* v. *Pennsylvania R. Co.*, 39 F.2d 798; *Herb* v. *Pitcairn*, 306 Ill.App. 583 [29 N.E.2d 543]; *Anderson* v. *Chesapeake & O. Ry. Co.*, 352 Ill. 561 [186 N.E. 185], certiorari denied 290 U.S. 675 [54 S.Ct. 93, 78 L.Ed. 583].) In the instant case plaintiff testified that he applied the brake and set it. Obviously, it would not have become released unless it was inefficient.

In connection with the foregoing rule defendant's contention that the evidence is insufficient to fasten liability on it, in that it does not show that the brake was properly operated by plaintiff, we are satisfied that the evidence was sufficient. Plaintiff testified: "Q. Just go ahead and tell us now what the customary and usual and normal manner of setting that brake is. A. Well, if you set it with your hands, that is the way I did it — is that all right? I set it from the right hand side, to give me more power with my hands. I swung my body with my arms after I got it. MR. MEYERS: Q. That is the manner in which you set this brake? A. Yes, sir." He also testified that the brake was tightly set and the pawl firmly enmeshed in the ratchet wheel. Defendant's evidence to the contrary merely created a conflict.

In addition to the foregoing, plaintiff produced the witness, Decker, who had had 22 years' experience as a brakeman and switchman. He stated that he examined the brake on the tanker about 3 hours after the accident and found a one-half to an inch slack in the brake staff up and down, a one-half to five-eighths inch in the pawl laterally, and one-half inch vertically; that with a car moving at the speed just before stopping with that amount of play, the pawl would jump out of the ratchet from the vibration of the brake shoes being applied to the wheels.

In opposition to the foregoing evidence defendant refers to its evidence showing that the brake was inspected three

times before the accident, twice by the inspector for the Southern Pacific Company and once by its inspector shortly before the accident and also subsequent to the accident and was found to be in a proper and safe condition; that plaintiff stated that the brake seemed to be in proper order when he set it; that the car was going up an incline but nevertheless stopped when the brakes were applied and remained standing after plaintiff claims he was thrown from the car. That evidence merely created a conflict which was resolved adversely to defendant by the jury and it did not render plaintiff's evidence incredible. There is no showing as to the extent of the incline in the flood track; plaintiff characterized it as a "little up-grade." It may have been very slight, too slight to have caused the tanker to roll on the track. The fact that the car did stop is in accordance with plaintiff's evidence that he had set the brake. Thereafter it released and the momentum of the car may well have been retarded sufficiently to cause it to come ultimately to a stop even though the brake was released. The result of the inspection by defendant and the Southern Pacific Company is counteracted by the fact that the brake did release after it was set, a condition that would ordinarily not occur if the brake were efficient. From all of the evidence, including the inference, we are convinced that there was sufficient to support the judgment.

Defendant asserts that plaintiff's testimony at the trial was inherently incredible and that the fall resulted from plaintiff's slipping, because plaintiff's witness Everly, an employee of defendant, testified on cross-examination that after the accident and while at the hospital plaintiff told him in response to a query of how it happened: "He said he was setting the brake and he slipped and fell." The case was reopened on plaintiff's motion and he denied that he made any such statement. In any event it is not necessarily inconsistent with his testimony that he was thrown from the tanker by the release of the brake. It may well have been that the release of the brake and spinning of the wheel caused him to slip and fall. Furthermore, Everly, although a witness for plaintiff, was an employee of defendant and the testimony was elicited on cross-examination by defendant. Everly's testimony was also weakened on plaintiff's redirect examination of him where he stated he did not remember whether plaintiff said he slipped or the brake slipped. Although he later on

recross-examination confirmed his original testimony when his attention was directed to a statement in accordance therewith made at defendant's request shortly after the accident, the jury was certainly justified in disbelieving his testimony on that point.

Defendant questions the credibility of plaintiff's witness, Decker, chiefly because he admitted that the nut on top of the pawl was not loose and that therefore there could not have been sufficient play in the pawl to permit it to slip out of the cogs of the ratchet. But his ultimate testimony was as above seen and he found play in between the pin holding the ratchet and the hole through which it passed. Those questions were of fact for the jury. (See *Karberg* v. *Southern Pacific Co., supra.*)

Defendant urges that plaintiff's evidence presented two sets of circumstances, each giving rise to inconsistent inferences and that under the rule in the federal courts, under those circumstances, the judgment must be for defendant. But in addition to the inference arising from the inefficient operation of the brake heretofore discussed, we have the testimony of Decker above-mentioned. Furthermore, plaintiff's testimony that when he set the brake it slowed the tanker and stopped it on an up-grade does not necessarily give rise to the inference that the brake was efficient.

Although it apparently was working when plaintiff applied it and set it and had effectively stopped the movement of the tanker, it evidently must not have been in good condition because it thereafter released and spun around. It may well have been that it was efficient to the point of temporarily holding, but not for a sufficient time. Plaintiff's testimony, as we have seen, directly refuted defendant's assumption that he slipped and fell. The principles with respect to inferences, giving consideration to the federal rule, in cases under the Federal Employers' Liability Act, was recently stated by this court in *Showalter* v. *Western Pacific R. R. Co.*, 16 Cal.2d 460, 476 [106 P.2d 895], as follows:

"Although the defendant in this case offered no evidence it contends that that produced by the plaintiff showed no negligence on the part of the defendant, but, on the contrary, indicated that plaintiff fell from the cars while engaged in a normal switching operation.

"A contention much the same was made in the recent sim-

ilar case of *Weiand* v. *Southern Pac. Co.*, 34 Cal.App.2d 500 [93 P.2d 1023]. The court at page 558 therein stated that the rule in the Wheelock case quoted above is predicated upon the theory that neither of two inconsistent inferences has been established; that 'If plaintiff has failed to make out a case for the jury on either of two theories, no recovery can be had. If, however, plaintiff has proven sufficient facts to justify a verdict upon *one* theory, the fact that there may be one or more other seemingly rational explanations of the episode in no manner precludes a recovery or invalidates the verdict. These are mere matters of argument to be presented to the jury.' " (See, also, *Weiand* v. *Southern Pacific Co.*, 34 Cal.App.2d 500 [93 P.2d 1023]; *Sherman* v. *Southern Pacific Co.*, 34 Cal.App. 2d 490 [93 P.2d 812]; *Hosman* v. *Southern Pacific Co., supra.*) In the instant case the evidence does establish an inference sufficient to support the judgment.

Defendant places especial reliance upon *Grand Trunk Western R. Co.* v. *Holstein*, 67 F.2d 780, but there it did not appear that the car was still moving when the brake released. It had been brought to a stop and the brake had been satisfactory in bringing it to a stop. The brake apparently released after the car was stopped, thus it was equally inferable that the brake was efficient as that it was not. In the instant case the tanker was still moving when the brake released. Thus, although the brake may have set properly and an inference would arise that it was efficient in slowing the movement of the car, it does not necessarily follow that it would hold, when the car was continuing to move. The inference would be of its inefficiency in holding after once set where the car continued to move. Furthermore, there is evidence here of the looseness of the pawl on its pivot and the other evidence of witness, Decker, which were not present in the Holstein case. A recent federal case is more in point. In *Didinger* v. *Pennsylvania R. R. Co., supra,* it is said at page 798:

"There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner. (*Altman* v. *Atlantic Coast L. R. Co.*, [C.C.A. 5] 18 F.2d 405.) The plaintiff adopted the latter method of proof. By the opening statement he offered to show by evidence that, in a switching operation, he was required to firmly

set the brake upon a freight car; that in doing so he placed his foot against the dog, and it 'went in' (the ratchet), and he heard it click; seeing that the brake held after it was set, and preparatory to leaving the car, that he placed his hand lightly upon the top wheel, when the brake suddenly 'gave away,' 'swung around the other way,' and, as he tried to hold it, threw him from the car; and that the brake was set 'in accordance with the proper and usual manner of setting the brake, and it gave way and did not hold.' In view of the frequently repeated assertion that the brake had been properly set and that the dog or pawl had firmly engaged one of the teeth of the ratchet, it cannot be assumed that this was a case of so-called 'hair-trigger' setting, where the dog lodges insecurely upon the outer extremity of a ratchet tooth.

"Assuming the proper setting of the brake, the fact that it did not hold demonstrates its inefficiency. As said in *Philadelphia & R. Ry. Co.* v. *Auchenbach,* (C.C.A. 3); 16 F. 2d 550, 552: 'The test of the observance of this duty [under the Safety Appliance Act] is the performance of the appliances,' and it was not necessary for the plaintiff to show whether this failure to function was due to the fact that the ratchet broke loose from the brake staff, that the ratchet teeth were worn, that the dog or its rocker pivot broke, that there was too much vertical play between dog and ratchet (as in *Lehigh Valley R. Co.* v. *Howell, supra*), or any other precise defect (*Minneapolis & St. L. R. Co.* v. *Gotschall,* 244 U.S. 66 [37 S.Ct. 598, 61 L.Ed. 995]). If the brake was properly set, as asserted, some defect must have been latent in it. Otherwise it would have held. Although the existence of negligence, in the sense of a failure to use care, is immaterial, the principle of res ipsa loquitur applies. The failure to hold under normal operation speaks for itself." Defendant attempts to distinguish that case on the ground that there the brake did not hold the car after it was set. But it was stated therein that the pawl went into the ratchet and he heard it click and he "seeing that the brake *held after* it was set" he placed his hand on it. No beneficial purpose may be accomplished by a discussion of all the cases cited by counsel. Each case must depend on its particular facts, and we are convinced of the sufficiency of the evidence in this case.

It is claimed that the case is not within the pur-

view of the Federal Employers' Liability Act or the Safety Appliance Act because defendant was not engaged in interstate commerce at the time of the injury. On the same score objection is made to the instruction given to the jury that the evidence discloses that both plaintiff and defendant were engaged in interstate commerce at the time of the accident. The evidence on the subject being undisputed, the question was one of law, and if the interstate character of the operation was established by that evidence, the jury was properly instructed. Here the tanker originated in Arizona with a cargo of cottonseed oil. Its destination was the plant of Swift & Company in Vernon, California, the area served by defendant. Defendant operated what might be termed a switching service for carriers of both interstate and intrastate shipments. Its track system connected with that of those carriers. It did not deal with the public generally, but took the cars from those carriers and delivered them to their ultimate destination within the range of its system. The tanker in question was placed upon the flood track in the course of its ultimate delivery to Swift & Company and was there delivered twelve hours later. It is clear that a terminal railroad for industries and carriers with which it connects and which it serves as a link in through transportation of interstate freight shipped to and from points over the connecting carriers is engaged in interstate commerce. (*United States* v. *California,* 297 U.S. 175 [56 S.Ct. 421, 80 L.Ed. 567].) Defendant urges, however, that there is no proof that defendant was engaged in interstate commerce when the plaintiff was injured. While it is true that defendant did not own the tanker, and the tanker was placed on the flood track and there remained for some time before it was delivered to its ultimate destination, the plant of Swift & Company, the inescapable conclusion is that the placing of it on the flood track was an inseparable and intimately connected part of the, in effect, continuous transportation of the car from Arizona. Plaintiff was engaged in that operation. Defendant's counsel in his opening statement to the jury said that the engine of the defendant picked up the tanker and it was taken down the track of the defendant, that the flood track is where cars are left while they deliver other cars and the former are later picked up for delivery to their destination. Such operation would not change the interstate character of the shipment. (See *Sherman* v.

*Southern Pacific Co., supra; Sullivan* v. *Wabash Ry. Co.,* 23 F.2d 323; *Herb* v. *Pitcairn,* 306 Ill.App. 583 [29 N.E.2d 543]; *Wabash Ry. Co.* v. *Bridal,* 94 F.2d 117; *Grand Trunk Western Ry. Co.* v. *Reid,* 42 F.2d 403; *Grand Trunk Western R. Co.* v. *Boylen,* 81 F.2d 91; *O'Neill* v. *Sioux City Terminal Ry. Co.,* 193 Iowa 41 [186 N.W. 633]; *Cott* v. *Erie R. Co.,* 231 N.Y. 67 [131 N.E. 737]; 15 C.J.S., Commerce, § 51.)

Defendant argues that there is a presumption that defendant was engaged in intrastate commerce, citing *Johnson* v. *Southern Pacific Co.,* 199 Cal. 126 [248 P. 501, 49 A.L.R. 1323], and that therefore the jury should have been permitted to decide the question and weigh the presumption. The presumption there referred to was that the carrier was engaged in intrastate commerce. In the instant case we have seen that defendant under the law was engaged in interstate commerce at the time of the accident. Under those circumstances the presumption could not have arisen. The condition upon which the presumption is said to have arisen in the Johnson case is that "in the absence of proof" defendant was presumed to have been engaged in intrastate commerce at the time of the injury.

The effect of that decision was that plaintiff had the burden of proving interstate commerce. Here, as we have seen, it is clear that defendant was so engaged. Furthermore, in the Johnson case the car involved had not yet entered interstate commerce whereas in the instant case it originated in Arizona and was in the process of reaching the Swift & Company plant in California.

■ Defendant refers to testimony of plaintiff that he received compensation payments and medical treatment for his injury as indicating that he was not engaged in interstate. commerce when injured. Even assuming that receipt of workmen's compensation has a bearing upon the subject, the evidence does not necessarily show the receipt of such compensation. It consisted solely of the following: "Q. You were taken to the hospital by Mr. Addington? A. I was. Q. And you received medical care at the hospital? A. I did. Q. And subsequent to leaving the hospital you received medical care from the doctor of the Los Angeles Junction Railroad Company? A. From Dr. Wells. Q. And you also received compensation from the Los Angeles Junction Railroad Company? A. A couple of months. Q. You received compensation up

until the day you filed this action in this suit? A. I presume so.''

■ Defendant asserts that plaintiff was in fact not an employee of defendant under the Federal Employers' Liability Act when he was injured because in applying for employment he fraudulently represented his age to be 44 when in fact he was 63, and that the court erred in failing to give the jury instructions requested by it on the subject. Plaintiff was examined by defendant's examining physician before he commenced work. He had been working four years for defendant when injured. Defendant's superintendent, Hall, testified that plaintiff was an experienced man, did his work and no one ever "turned him in." Hall referred to him as a squirrel which would imply agility. Assuming that the misrepresentation was a defense, the jury was instructed at plaintiff's request in regard to this subject that such fraudulent misrepresentation does not prevent a recovery unless there is a causal connection between the injury and the misrepresentation. There was sufficient evidence from which the jury could have concluded, as they impliedly did, that there was no causal connection. Where employment is induced by fraudulent representations of the employee not going to the *factum* of the contract the employment exists although there may be ground for rescinding the contract, and recovery may be had from the employer for negligent injury to the employee at least where there is no causal connection between the injury and the misrepresentation. (See *Phillips* v. *Southern Pacific Co.*, 14 Cal.App.2d 454 [58 P.2d 688]; *Minneapolis, St. P. & S. Ste. M. R. Co.* v. *Borum*, 286 U.S. 447 [52 S.Ct. 612, 76 L.Ed. 1218]; *Lupher* v. *Atchison, T. & S. F. Ry. Co.*, 81 Kan. 585 [106 P. 284, 25 L.R.A.N.S. 707]; *Payne* v. *Daugherty*, 283 F. 353 [136 A.L.R. 1124]; *Matthews* v. *Atchison, T. & S. F. Ry.*, 54 Cal.App.2d 549 [129 P.2d 435]; *Minneapolis etc., R. Co.*, v. *Rock*, 279 U.S. 410 [49 S.Ct. 363, 73 L.Ed. 766], is distinguishable in that there the employee when first applying for employment was rejected by the company's physician because of several physical defects. He subsequently applied under a different name and in violation of the company's rules, had another take the physical examination in his place. (See *Minneapolis, St. P. & S. Ste. M. R. Co.* v. *Borum, supra.*)

■ Certain jury instructions with reference to defend-

ant's liability for the maintenance of an inefficient brake are attacked on the ground that they did not include the factor that the brakes must be used in the usual and customary manner. Suffice it to state that other instructions embraced that factor and the criticized instructions correctly stated the law as herein stated. The charge to the jury as a. whole was adequate.

Defendant complains of error in the admission of the testimony of witness, Decker, heretofore referred to and in part quoted, on the ground that it was improper opinion evidence. The evidence shows Decker to have been fully qualified by experience with brakes. His testimony was not that the brake was unsafe, thus the case of *Sappenfield* v. *Main St. etc., R. R. C.*, 91 Cal. 48 [27 P. 590], cited by defendant is not controlling. It was that the play in the parts was such when he examined it that the pawl would disengage. The brake is a mechanical device, its operation somewhat complicated, and the effect upon its operation of a loose condition of its parts was properly the subject of expert testimony. (See *Colwell* v. *St. Louis-S. F. Ry. Co.*, 335 Mo. 494 [73 S.W.2d 222]; *Herb* v. *Pitcairn, supra.*)

Decker testified with reference to exhibits consisting of photographs of the brake. Defendant objects to the use of those exhibits. Decker testified that those photographs portrayed the brake as he saw it shortly after the accident. His testimony was that the play in the brake parts was sufficient to permit the lifting of the pawl above the ratchet as shown in the photographs and that he had lifted it up that way when he examined it. The photograph shows a stone under the pawl holding it up. Plaintiff's counsel stated that he placed the stone under it in order to take the picture in response to a query by defendant's witness Forrester on cross-examination. The latter stated he would not pass on examination a brake with a pawl that could be lifted that high. We find no error or prejudice in the cross-examination or the use of the exhibits.

The damages are said to be excessive. The award was $8,000. Plaintiff's injuries consisted of the loss of the index, ring and middle fingers of his right hand and injury to his right shoulder. He suffers pain in the finger stumps and further surgery will be necessary to eliminate the sensitive condition of the stumps. There is a permanent stiffness of the

right shoulder somewhat restricting the movement of the arm. He will never be able to do any railroad work in the future. His life expectancy at the time of injury was 8.98 years. He was capable of earning up to $150 per month as shown by his compensation from defendant. Defendant paid him $215.20 in 1935, $646.80 in 1936, $1,655.49 in 1937, and $1,437.80 in 1938. Under all of these circumstances the damages were not excessive.

Other errors are claimed but they are insignificant and we find no merit in them. We are satisfied from the entire record that the judgment should be affirmed.

It is so ordered.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Spence, J. pro tem., concurred.

Appellant's petition for a rehearing was denied December 31, 1942.