judicial district, in the case of Baker, Receiver, v. Beattie, 222 S. W. 658; Labatt on Master & Servant (2d Ed.), vol. 1, § 96a; see, also, the recent case of Qualls v. Atchison, T. & S. F. R. Co., from California, 112 Cal. App. 7, 296 P. 645, in which Minneapolis, etc., Ry. Co. v. Rock is discussed; Borum v. Minneapolis, etc., Ry. Co., 184 Minn. 126, 238 N. W. 4; Jay Lupher v. A., T. & S. F. Ry. Co., 81 Kan. 585, 106 P. 284, 25 L. R. A. (N. S.) 707, and cases cited; cases cited and discussed in the footnotes in 25 L. R. A. (N. S.) page 708; 39 Corpus Juris, p. 276, § 401.

The conclusion reached by the Supreme Court of the United States in the Rock Case appeals to reason and justice. 279 U. S. 410, 49 S. Ct. 363, 73 L. Ed. 766. Joe Rock made application for employment as a switchman in the yards of the Minneapolis, etc., Ry. Co. He underwent a physical examination at the hands of the company's surgeon, and was found to be in exceedingly bad physical condition, and for that reason was rejected. He then applied under another name, and secured another man, who was well and strong, to stand the examination. He went to work under the assumed name, and was injured. The Supreme Court of the United States held that Joe Rock never became an employee of the railway company; that his gross fraud was a continuing one; that at no time was he entitled to the protection or benefits of the Federal Employers' Liability Act, and could not recover thereunder. It did not hold that where the applicant made a false statement about a matter disconnected from or not associated with his employment, and which was in nowise connected with the cause of his injury and not related to his fitness or his ability to discharge the duties required of him, he could not recover under the Federal Employers' Liability Act (45 USCA §§ 51–59). That it did not intend to so hold we think is made reasonably clear in the opinion written by the same eminent jurist in the case of Minneapolis, etc., Ry. Co. v. Borum, 286 U. S. 447, 52 S. Ct. 612, 76 L. Ed. 1218.

Dawson was an employee of defendant in error within the meaning of the Federal Employers' Liability Act at the time he was injured. It was conclusively shown that he was physically and mentally sound, thoroughly competent to perform the duties required of him by defendant in error, and had performed them acceptably for twelve years in its service, and was not in the least affected by the injury he had received nineteen years before.

We see no reason why the rule uniformly applied in this jurisdiction, and as we believe in all jurisdictions, should not be applied in this case. Plaintiff in error's motion for judgment in the sum of $2,625, as found by the jury, should have been granted by the district court, and judgment entered for him in that amount. Therefore the judgments of the Court of Civil Appeals and of the district court are reversed, and judgment is here rendered for plaintiff in error for the sum of $2,625, with 6 per cent. interest from the date of judgment in the district court.

### TEXAS & N. O. R. CO. v. WEBSTER et al.
### No. 6420.

Supreme Court of Texas.
April 4, 1934.

Baker, Botts, Andrews & Wharton, of Houston, and Kemp & Nagle, of El Paso, for plaintiff in error.

Lea, McGrady & Edwards, of El Paso, for defendants in error.

PIERSON, Justice.

This suit was brought by Katie M. Webster, in her individual right and as temporary administratrix and legal representative of the estate of G. C. Webster, deceased, and as next friend for Doris Webster and Marguerite Webster, minors, against the Texas & New Orleans Railroad Company for damages for the death of G. C. Webster while an employee of the railroad company in its yards at El Paso. Based upon the answers made by the jury to special issues submitted to them, the trial court entered judgment for the plaintiff in the sum of $27,000. From this judgment the railroad company appealed to the Court of Civil Appeals at El Paso, and the judgment of the trial court was affirmed. 53 S.W.(2d) 656, 661. A writ of error was granted.

Plaintiff in error contends, in substance, that the Court of Civil Appeals erred in sustaining the judgment of the trial court because G. C. Webster had secured employment with the Galveston, Harrisburg & San Antonio Railway Company (of which the Texas & New Orleans Railroad Company was successor and entitled to all the rights and defenses of its predecessor) by false and untrue statements, and that therefore, under the law, G. C. Webster never became an employee of the Galveston, Harrisburg & San Antonio Railway Company or of the Texas & New Orleans Railroad Company, and that whatever rights he had against the Texas & New Orleans Railroad Company arose under the laws of the United States and the Federal Employers' Liability Act (45 USCA §§ 51–59).

Pertinent to this contention, the following facts appear: The Galveston, Harrisburg & San Antonio Railway Company, as a condition of employment, required that G. C. Webster make an application in writing and answer various questions contained therein. He was asked to give a history of his physical and mental condition, his past injuries, if any, and to state if he had ever been engaged in any lawsuits with former employers or had engaged attorneys to represent him in such matters. Some of the questions asked Webster and answered by him are as follows:

"Question No. 10. Have you ever been injured? If so, how often, when and at what place?" Answer: "Yes, Waco, Texas." "How did each injury or injuries occur?" Answer: "Brake wheel came off staff." "Extent of injuries?" Answer: "Back bruised."

"Question No. 17. Have you ever employed or been represented by an attorney in connection with any claim or suit for damages against a railroad, or street car company or other employer? If so, state fully all facts pertaining to such claim or suit and give the name and address of the attorney and the disposition made of the claim or suit?" Answer: "No."

Webster had sustained an injury at Waco while in the employment of the Missouri, Kansas & Texas Railway Company of Texas in 1915, as his answers show, and also had employed attorneys to represent him in a suit for damages which he filed against that company in the district court of McLennan county on September 2, 1915, which suit was settled for $1,350.

It is agreed that Webster and the Texas & New Orleans Railroad Company, at the time Webster received his alleged injuries, were engaged in interstate commerce. Therefore his cause of action arose under the provisions of the Federal Employers' Liability Act (45 USCA §§ 51–59).

It is shown in the case that G. C. Webster was first employed by the Galveston, Harrisburg & San Antonio Railway Company, and that that company was succeeded by the plaintiff in error, Texas & New Orleans Railroad Company. The Court of Civil Appeals in its findings of fact says:

"The latter corporation took over the operation, employees, the records, applications, contracts, and various things of that kind, of the former corporation; it was the practice of the said railroad companies to make investigation of the past record of new employees as promptly as possible. The record does not show whether the past record of Webster was investigated by either company, or whether either company relied on the statement made by Webster in his application as being true. We think from the evidence it might be presumed that such investigation was made, and that the Galveston, Harrisburg & San Antonio Railway Company relied on the statement as being true. * * * From all of the facts and circumstances shown, appellee submits that the facts indicate that after investigation was.

made the Galveston, Harrisburg & San Antonio Railway Company with full knowledge of all the facts surrounding Webster's previous injury, and his subsequent continuous service with the Galveston, Harrisburg & San Antonio Railway Company and appellant (Texas & New Orleans Railroad Company) for some fifteen years, said companies had elected to keep Webster as an employee, and that by reason thereof it should not now be held as a matter of law that appellant is under no liability for its negligence, as found by the jury. * * * The evidence, in our opinion, is not of that degree of certainty that we can say that Webster obtained and held his place with the two companies through all the years through fraudulent means. Should we be in error in so holding, the evidence shows that the misrepresentations made by Webster in obtaining his employment were made to the Galveston, Harrisburg & San Antonio Railway Company, and not to appellant. Appellant took Webster over as an employee in taking over the Galveston, Harrisburg & San Antonio Railway Company. The evidence shows that appellant (the Texas & New Orleans Railroad Company) took over Webster as an employee by permission of the Interstate Commerce Commission, and the Texas Railroad Commission, and investigated Webster's standing as an employee after taking him as such. * * * It is not claimed that appellant (Texas & New Orleans Railroad Company) was in any manner deceived or misled by said misrepresentations in employing or retaining Webster in its employ."

It appears from the record that at the time of his injury Webster had been working in the service of plaintiff in error for nearly fifteen years, and prior to that time had been in the service of its predecessor. Further, as indicated by the opinion of the Court of Civil Appeals, it appears probable that the plaintiff in error knew of the facts complained of regarding Webster's injury and claim for damages against the Missouri, Kansas & Texas Railway Company of Texas in 1915. In any event, we think under the facts of the case that this court cannot hold as a matter of law that Webster was not an employee of the plaintiff in error and not entitled to the benefits of the protection of the Federal Employers' Liability Act (45 USCA §§ 51–59)— but, on the other hand, that he was such an employee, and that his wife and children were entitled to bring this suit under said act and to recover for the damages caused by the negligence of plaintiff in error's employee.

This case is controlled by the principles of law announced in the case of Dawson v. Texas & Pacific Railway Company, 70 S.W.(2d) 392, opinion this day delivered, and reference is made thereto.

The facts here are more favorable to the injured employee than in the Dawson Case. Webster truly disclosed his employment by the Missouri, Kansas & Texas Railway Company of Texas, and the fact that he had been injured, and the nature thereof. The only fact withheld was his employment of attorneys and the filing of a suit. Plaintiff in error could not have regarded the fact that he had employed attorneys and filed suit against the Missouri, Kansas & Texas Railway Company of Texas as having any material bearing upon the physical condition it required. When Webster was employed by the Galveston, Harrisburg & San Antonio Railway Company in 1916, the physical examination of him showed him to be physically fit. There was no untrue statement which affected the physical fitness of Webster to hold his position with the company, and it is assumed his physical condition was the same when he became an employee of plaintiff in error. At least it was not shown that his physical condition was such as to make his employment inconsistent with plaintiff in error's proper policy or its reasonable rules to insure discharge of its duty to select fit employees. Applicable here is the language used in the case of Minneapolis, etc., Ry. Co. v. Borum, 286 U. S. 447, 52 S. Ct. 612, 613, 76 L. Ed. 1218, by the Supreme Court of the United States:

"It is clear that the facts found, when taken in connection with those shown by uncontradicted evidence, are not sufficient to bring this case within the rule applied in Minneapolis, etc., R. Co. v. Rock [279 U. S. 410, 49 S. Ct. 363, 73 L. Ed. 766], supra, or the reasons upon which that decision rests."

■ There is another issue in the case that requires our attention. The suit was brought against plaintiff in error by Mrs. Katie M. Webster in her individual right and as temporary administratrix of the estate of G. C. Webster, deceased, and as next friend of Doris Webster and Marguerite Webster, minors. In its findings the jury found damages in the sum of $2,000 "for conscious pain and suffering and loss of time prior to the death of said Webster," which were recoverable by Mrs. Webster as the administratrix of the estate of G. C. Webster, deceased.

In its statement under its fifth assignment of error, plaintiff in error complains that Mrs. Webster was permitted to testify:

"That on the evening in question her deceased husband, G. C. Webster, told her that he 'like to have gotten killed', and showed a lump on his head which was slightly to the right of the center, which lump remained there two or three days; that the deceased did not, at the time, regard it as serious and neither did the witness; that between two and three weeks after this, symptoms began to appear; that the first symptoms that witness noticed were the fingers of his left hand began to tingle and he had a kind of numbness in his arm which he complained of all the time; that he grew worse all the time and did not have any grip in his hand and his arm would swing just from the shoulder, you could see it with him walking down the street, this arm swinging; he complained of pain in that arm all the time. Later his left leg became affected and if he would get up and start to walk he would fall down. That the latter was about three weeks before he went to the hospital; that his condition was very bad and he suffered all the time; was very, very sick; that witness observed manifestations of pain in the movement of this arm and he would cry out with pain; that the movements of his arm were more than a twitching."

It objected to similar testimony of Doris and Marguerite Webster.

Plaintiff in error contends that this testimony was inadmissible under article 3716, R. S. 1925, which provides:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

If it was error to admit the above testimony, in the light of all the testimony, it was harmless error. The fact of the accident to G. C. Webster, its time, place, and character was thoroughly established by many witnesses. In fact, it was not controverted. Likewise, the later physical condition of G. C. Webster, his suffering, and death were thoroughly established by many witnesses. In fact, they were not controverted. The contention of plaintiff in error was that the accident to Webster did not cause his death. The testimony complained of, even if inadmissible

under article 3716, was harmless, as it related to uncontroverted facts.

Finding no reversible error in the case, the judgments of the Court of Civil Appeals and of the district court are affirmed.