**Ray C. Carter, Appellant, v. Peoria and Pekin Union Railway Company, Appellee.**

**Gen. No. 8,740.**

Opinion filed April 25, 1934.

Rehearing denied June 25, 1934.

MANSFIELD & COWAN and H. H. PATTERSON, for appellant.

Jos. A. WEIL and EUGENE E. HORTON, for appellee.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

Appellant filed this suit on August 6, 1930, against appellee corporation, under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, claiming that while working as a switchman for appellee he sustained certain injuries because of a defective hand brake upon a car which he was then endeavoring to bring to a stop, by the use and application of such hand brake.

Appellant's work was that of a switchman in the yard of appellee, in the breaking up and making up of trains of cars operating in interstate commerce. In pursuance of such work the cars are pushed up a lead track to the summit of an elevation in such track called a "hump," and the work of car distribution consists of pushing the cars by means of a locomotive to the top of the "hump," and then allowing them to roll down the slope on the other side of the "hump," and thus to descend by gravity, under the control of hand brakes, to their respective destinations upon the various switch tracks where they are marked to go. In this manner appellee made up its trains. It is claimed by appellant that while attempting to stop the car in question by the application of the hand brake, that due to the brake staff, or brake rod, being bent, the piece of iron or "dog" which was used to maintain the application of the braking power would not hold in

the ratchet which was attached to the brake rod; and that after appellant had turned the brake wheel as far as possible, he applied extra leverage with what is called a brake club, being a stout stick about two and a half inches in diameter and about two and a half feet in length; that after doing this he inserted the "dog" in the sprocket or ratchet attached to the brake rod, and that due to the alleged defective condition of the braking device it would not hold, whereupon the brake wheel spun around throwing appellant from the car to the ground, injuring him.

The trial court gave a peremptory instruction on behalf of appellee at the close of all the evidence. Appellant brings this appeal from the action of the court in giving said instruction and thus refusing to submit the case to the jury.

Appellee filed its plea of general issue, and a special plea in which it denied appellant's employment, alleging he was "not of right" appellee's employee at the time he received the injuries, within the meaning of the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, and the Safety Appliances Act, Cahill's St. ch. 114, ¶ 140 *et seq.* This special plea alleged that the appellant obtained and held his employment with appellee through fraudulent means and wrongful concealment, in that he represented in his application for employment with appellee that he had never before been injured while in the employ of another railroad; and that he had not consulted any physician for physical disability for injury within a period of five years prior to such application. Appellee alleges that confiding in these false representations, it permitted appellant to serve as such switchman, but that his services at all times were wrongful and a fraud upon appellee, and that through such fraudulent means he did not make himself an employee of appellee within the meaning of the above acts.

Appellee relies upon the case of *Minneapolis, St. P. & S. S. M. Ry. Co. v. Rock*, 279 U. S. 410, 73 L. Ed. 766. In that case, one Joe Rock made application with the railway company for employment as a switchman. He was rejected by the railway company's examining physician because of physical disability. Thus failing to pass the physical examination, he made another application a few days later, with the same railway company for employment under the name of John Rock, representing that he had not theretofore made application for such employment. He was directed to go to the railway company's physician for physical examination. Instead of doing this, he procured one Lenhart to impersonate him and to go in his place and to submit to the physical examination. Lenhart's physical condition was found to be satisfactory and the physician reported favorably upon the application, believing the said Lenhart to be John Rock. The said Joe Rock, alias John Rock, having thus obtained the approval of the railway company's physician by the above fraud and deception, went to work. Later he was injured and brought his suit under the Federal Employers' Liability Act to recover damages sustained by such injuries. In that case the court found that Rock was an imposter and obtained his employment by such extreme fraud and deception that he was not of right an employee of the railway company within the meaning of the act.

Appellee claims that appellant should be barred of his action in this case because he failed to show upon his application that he had received an injury while working for the Chicago, B. & Q. Ry. Co. in 1926, by the derailment of a car; and further, because of appellant's answer in the negative to question number 16 which is as follows: "The following are names and addresses of all physicians whom I have consulted for physical disability for injury during the past five

years.'' Appellant's answer to this question was, ''None.'' It is further claimed by appellee that appellant was not in good health. We do not find any question upon appellant's application blank with reference to his state of health, to be answered by him, and we do not find any such representation made by appellant thereon.

The appellant upon making his application with appellee was directed to its examining physician who examined him with his clothing removed. The examining doctor discovered the scar upon the abdomen of appellant, which was the result of his former injury while in the services of the Chicago, B. & Q. Ry. Co. Appellant claims the physician asked him about the origin of this scar, and that he told him about his accident, and when and where it was received. Appellant claims appellee's physician wanted to know who performed the operation and that he told him the name of the surgeon in Chicago who had done the work, and that the examining physician stated he had done a good job. This all occurred before appellant went to work for appellee. Appellee's examining physician filled out his attached report, or surgeon's certificate, to the application, and signed same. This surgeon's report shows under the heading, ''Remarks,'' the scar upon appellant's abdomen and its location. It appears that a copy of this report goes to the superintendent of appellee for his approval, and from him to the president for approval.

Plaintiff below claims that he sustained certain injuries because of being thrown from the car by the defective hand brake as aforesaid; that he fell upon his back and shoulders; and that he reported his accident to Clark, the foreman of the switching crew. Clark stated that appellant made such report and described how the accident happened, and complained that he had hurt his arm and shoulder. This was just after the accident. Clark asked appellant if he wanted

to work the rest of the night, and states that appellant said he would. Clark states appellant did work the rest of that night. Clark asked appellant, "If he had those cars tied down so that they would hold the track," including the one from which appellant had been thrown, and states that appellant said, "Yes." Appellant worked through the night until quitting time, which was about 7 a. m. the following morning. He says the foreman asked him if he wanted to turn in a report of the injury, and that he said no, that he would be back to work that night. He claims that upon going to bed he was unable to sleep and arose about 4:30 p. m. that afternoon, went to the yard office and reported that he could not work; that he then went back to bed at his hotel; that the pain in his shoulders and in his left arm became worse; that the lady who ran the hotel reported his case to the yard office of appellee about 9 or 10 o'clock that night; and that the ambulance came and he was taken to the hospital. Appellant was in the hospital from January 11 to January 28 under the care and treatment of appellee's physician. He claims he is disabled in the back and between the shoulders because of this accident.

Appellee urges that appellant had a fit which caused him to fall from the car. Appellee's switching foreman, Clark, says he talked to appellant soon after the accident, that they had a lot of switching to do, and that appellant worked all night performing his duties as switchman. He says appellant said he was hurt, but could stick it out until morning, and that he did so.

It is apparent that the peremptory instruction in this case was given under the theory and rule as announced in the ·Rock case. Appellant claims he did not conceal the fact of his injury sustained while working for the Chicago, B. & Q. Ry. Co., and gave full particulars thereof to appellee's examining physician. We do not find any evidence to the effect that this former injury in any way disqualified or prevented

appellant from properly performing his duties as switchman. Appellee's examining physician found appellant physically fit for such work.

Appellee maintains that appellant's answer to said question 16, of itself, constituted such fraud as to preclude appellant from maintaining this action. The fraud perpetrated in the *Rock* case resulted in Rock securing employment as a switchman when he had been rejected for physical disability. Appellant's injury received while working for the Chicago, B. & Q. Ry. Co. does not appear to have caused a physical disability to properly perform the work of switchman. Appellant urges he did not intend to conceal anything with reference to his answer to said question 16. He gave the proper name of each railroad he had worked for. We are of the opinion this fact tends to refute the presumption that he had any deliberate intent to deceive appellee. He further stated that he understood there was a 29-day probationary period during which time the appellee would investigate him with his former employers, and his employment would not be considered as final until after the expiration of this time; that this period passed and he continued working for appellee.

Section 11 of the Federal Safety Appliances Act is mandatory and requires cars of common carriers to be equipped with efficient hand brakes. *Anderson v. Chesapeake & Ohio Ry. Co.*, 352 Ill. 561. Since the decision in *Minneapolis, St. P. & S. S. M. Ry. Co. v. Rock, supra,* a similar case was before the United States Supreme Court, entitled *Minneapolis, St. P. & S. S. M. R. Co. v. Borum,* 286 U. S. 447, 76 L. Ed. 1218, wherein the said Borum had falsely stated his age to be 38 years when in fact it was 49, and if the truth had been known as to his real age he would not have secured his employment. He was injured and recovered a judgment. The writer of the opinion in the

*Rock* case wrote the opinion in the *Borum* case. The rule as announced in the *Rock* case was not extended to include the *Borum* case. In the latter case, it was held that the employee's physical condition was not shown to be such as to have made his employment inconsistent with the railroad's reasonable rules for selecting fit employees.

Various issues of fact were raised in the case at bar relative to appellant's application, his examination, the defective hand brake, and the alleged injuries. Appellant introduced testimony of doctors, and X-ray pictures, regarding the same. After a careful review of this case and of the authorities pertinent thereto, we are of the opinion that this is not such a case as should be brought within the rule applied in the *Rock* case. *Minneapolis, St. P. & S. S. M. R. Co. v. Borum, supra; Powers v. Michigan Cent. R. Co.,* 268 Ill. App. 493. Rock secured his employment by fraudulently substituting another man to be physically examined in his stead, after he had been rejected for physical disability. In this case, appellant passed the physical examination. In the case of *Powers v. Michigan Cent. R. Co., supra,* the Appellate Court of the First District had before it similar questions as involved herein. That court in a well considered opinion discusses in detail cases relative to the questions here presented. We adopt the reasoning and conclusions reached in that case.

In such event, the rule obtains that the trial court has no power to weigh and determine the preponderance of conflicting evidence introduced to establish or disprove facts, or to take a case from the jury and direct a verdict where there is legitimate evidence tending to prove the cause of action. *Mirich v. Forschner Contracting Co.,* 312 Ill. 343; *Phillabaum v. Lake Erie & Western Ry. Co.,* 315 Ill. 131; *Waschow v. Kelly Coal Co.,* 245 Ill. 516.

For the reasons indicated, we hold that the motion of appellee herein, the defendant below, for a peremptory instruction should have been denied, and the evidence should have been submitted to the jury.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*