211 P.2d 402

## CLARK v. UNION PAC. R. CO.

### No. 7548.

Supreme Court of Idaho.

Nov. 9, 1949.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson, Pocatello, E. H. Casterlin, Pocatello, Wm. S. Holden, Idaho Falls, for appellant.

Albaugh, Bloem & Hillman, Idaho Falls, for respondent.

GIVENS, Justice.

Respondent, ostensibly employed by appellant as a brakeman, working on a switching crew in the yards at Idaho Falls, attempted—in line of duty—to board a moving oil car. He claimed the grabiron and sill step were loose on one side, thereby giving way and tending to let him slip in under the moving car. To avoid such injury, he threw himself backward and fell from the car, striking his head on a rail of the adjoining track, rendering him momentarily unconscious, and causing ensuing alleged permanent injuries in that the accident either caused, or changed, petit mal into grand mal and resulted in other related disabilities.

Respondent sued under the Federal Employers' Liability Acts, 45 U.S.C. (1946) Ch. 2, §§ 51 and 52, p. 4911, 45 U.S.C.A. Ch. 2, §§ 5 1and 52; Vol. 10, Title 45 Fed. Code Ann. §§ 51 and 52; and the Safety Appliance Acts, 45 U.S.C. (1946) Ch. 1, §§ 4, 11 and 13; 45 U.S.C.A. Ch. 1, §§ 4, 11, and 13; Vol. 10, Title 45 Fed.Code Ann. §§ 4, 11 and 13; charging a violation of Sections 4, 11 and 13 of the latter, and obtained a verdict for $35,000. After overruling a motion for a new trial and judgment notwithstanding the verdict, judgment was entered therefor, occasioning the present appeal, which presents appellant's points of error thus:

First, the evidence is insufficient to support the judgment;

Second, the verdict is so excessive as to appear to have been given under the influence of passion or prejudice;

Third, that respondent perpetrated fraud upon appellant at the inception of his employment, thereby depriving him of the right to sue and receive the benefits of the above Federal Statutes.

The last point, with an instruction given by the court relative thereto, is decisive of the appeal.

The allegation of employment is contained in Paragraph III of the Complaint: "That on and prior to the 28th day of October, 1947, the plaintiff was employed by the defendant as a switchman in interstate commerce, and working, at the time of the accident hereinafter set forth, within defendant's railroad yards in the City of Idaho Falls, Idaho." And denied by the answer: "Defendant denies each and every allegation contained in paragraphs II, III, IV, V and VI of said complaint."

During the course of the trial, without objection interposed by him, respondent as a witness on cross-examination, and as a witness for appellant relative to copies of his written applications for employment both with appellant and others, admitted he had made false and deceptive statements with regard to his physical condition, and did so because if he had made true statements, he probably would not have secured employment. Appellant's former chief surgeon, at the time of the

trial employed only as a consultant, testified without contradiction that if respondent had stated to appellant when he was first employed, that he was afflicted with epilepsy, he would not have been employed. It is virtually conceded that unless the person afflicted with mal, petit or grand, so states or is seen in a seizure, no diagnosis will disclose it.

In this connection, appellant assigns as error the giving of this instruction by the court: "As stated to you in the previous instruction, the plaintiff's action is brought under the provisions of the Acts of Congress quoted to you in that instruction. *And the plaintiff's employment by the defendant at the time of the alleged injury was such as to bring him within the provisions of those acts, and to entitle him to the benefits of those acts.*" Instr. No. 4. (Emphasis indicates erroneous position.)

■ Respondent counters with the contention fraud was not plead. On the other hand, the evidence of respondent's deception went in without objection by him and the issue was, therefore, properly in the case. Idaho State Merchants' Protective Ass'n v. Roche, 53 Idaho 115, at page 119, 22 P.2d 136, 137: "Evidence received without objection enlarges the pleadings." In so concluding, we do not pass on whether fraud as a defense may, over objection, be presented under the general issue.

Respondent further urges that since appellant made no request for a correct instruction, it has waived the error—if any —in the instruction and furthermore, the evidence showed respondent had sufficiently advised appellant of his epileptic condition to at least put it on notice, and hence there was no prejudicial error. The evidence as to what respondent told appellant's physicians as to his condition prior to the accident was equivocal and different conclusions could be drawn therefrom and as to what warning or notice these statements portended. This presented a question for the jury, not for the court.

■ The learned trial judge in denying a judgment non obstante and motion for a new trial, correctly stated and recognized the situation and that the instruction was erroneous, thus: "This, of course, involves a ruling upon the question of fraud, as affecting the plaintiff's status as an employee. On this question, I think the defendant's pleading is sufficient to raise the issue. That is, the defendant's denial of the allegations of plaintiff's complaint to the effect that the plaintiff was at the time of the injury an employee, within the meaning of the Federal Acts, is sufficient to entitle the defendant to challenge the plaintiff's position as an employee upon the ground that he fraudulently concealed from the defendant his epileptic condition. I think this is the effect of the decision of the U. S. Supreme Court

74

in the case of Minneapolis, St. Paul, & Sault Ste. Marie Railway Company v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766. In the case at bar, however, the cross examination of the plaintiff is to the effect that Doctor Willson, who was at the time the examining physician for the defendant, knew of these seizures. This raised the question as to whether or not the defendant was actually deceived by the failure of the plaintiff to disclose his true physical condition. And this is so, even though the plaintiff himself testified that his concealing was deliberate, and with intention to deceive. This issue of fact was not submitted to the jury with appropriate instructions. This is no doubt error, but it is an error that the defendant is not urging as ground for a new trial, and is one which is probably waived by the failure of the defendant to request appropriate instructions on the issue."

■ Where an instruction is erroneous, the complaining party need not request a correct instruction to take advantage of the error. Abbs v. Redmond, 64 Idaho 369, at page 375(3-4), 132 P.2d 1044.

The instruction pre-emptorily took this issue from the jury and the rule as to amplifying or explaining instructions is not pertinent. Mitchell v. Atwood, 55 Idaho 772, at page 775, 47 P.2d 680, is not applicable.

■ If respondent's deception so entered into the contract of employment with appellant as to vitiate it, under the Fed-eral authorities he was not entitled to sue under the Federal Statutes, Minneapolis, St. P. & S. Ste. M. R. Co. v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766; Minneapolis, St. P. & S. Ste. M. R. Co. v. Borum, 286 U.S. 447-451, 52 S.Ct. 612, 76 L.Ed. 1218.

■ This issue should have been presented to the jury under appropriate instructions as to whether the false or deceptive statements affected the factum of the contract, Newkirk v. Los Angeles Junction Ry. Co., 21 Cal.2d 308, 131 P.2d 535, at page 543 (15-16), or there was a causal relation between his concealed infirmity and the accident.

The error is substantial and, therefore, prejudicial and requires a reversal.

Since the cause is remanded for a new trial, we need not and do not discuss the sufficiency of the evidence or the claimed excessiveness of the verdict.

Judgment reversed and cause remanded for a new trial. Costs to appellant.

PORTER and KEETON, JJ., and GLENNON, District Judge, concur.

LOWE, District Judge (dissenting).

I am unable to agree with the statement contained in the majority opinion that the evidence as to what the respondent told appellant's physician as to his condition prior to the accident was equivocal and different conclusions could be drawn

therefrom, nor can I agree with the conclusion arrived at, viz. that the case should be reversed and remanded for a new trial.

The evidence in question is as follows:

"Q. Were you called in the draft, Mr. Clark? A. Yes, sir.

"Q. Were you accepted? A. No. sir.

"Q. Do you know why you were not accepted? You can just explain what occurred, if you will? A. Well, I had—I thought quite seriously of this nervous condition, this nervous disorder which I had, and I talked to Dr. Cline about it, and he said he didn't think it would be wise for me to go into the service in that condition; and he gave me a note or a letter to the commanding officer at Fort Douglas, Utah, and I presented this to the examining officer and they rejected me.

"Q. Now upon you return from Fort Douglas state whether you were called in by who was then the railroad doctor here? A. Dr. Harry L. Willson called me in.

"Q. Now just a moment so we will be certain here, was Dr. Willson at that time the official railroad company doctor in this community? A. Yes, sir.

"Q. You say Dr. Willson then called you in? A. Yes, sir.

"Q. Now just state what occurred? A. He called me in for an examination and after examining me why he asked me why the army didn't take me and I

told him I wasn't quite sure what the reason was as they never explained why they didn't take me, and so he called the local draft board and then—I assume that they told him what my trouble was, and he said that he would get in touch with Dr. Wright.

"Q. Who is Dr. Wright? A. Dr. Wright was the chief surgeon at Salt Lake City.

"Q. Did he have any official connection with the railroad company, at that time? A. Yes, he was the chief surgeon representing the railroad company.

"Q. And then what occurred? A. As I recall it, he called Dr. Wright, and after having this talk with him, why, he said that it was okay for me to go back to work.

"Q. And did you do so? A. Yes sir.

"Q. You mean you went back to work for the railroad company? A. Yes sir.

"Q. Can you remember, Mr. Clark, about when it was that you were called in the draft? A. No, I don't remember, exactly, when it was.

*   *   *   *   *

"Q. Now, Mr. Clark, there has been a little confusion here over dates with respect to your war service. I will ask you whether or not it was in the month of April, Nineteen, forty-five, that you talked to Dr. Harry Willson about your being rejected in the service? A. It

could have been, very easily. My memory is not too good on those dates, and it could have been, very easily, yes sir.

"Q. And at that time, I will ask you if you did not tell Mister Willson that you had been rejected by the Selective Service Board because of these seizures that you had had before? A. No, sir, I didn't say that.

"Q. What did you tell him about it? A. I told him that they had handed me a small piece of paper, at Fort Douglas, with the word 'Reject' typed on the paper, and he asked me what I had been rejected for, and I told him I didn't know exactly what I was rejected for.

"Q. I will ask you whether on the seventeenth day of April, Nineteen, forty-five, in Dr. Willson's office, when you and he were there alone, if you did not tell him that you had been rejected of the army—been rejected by the army because of the history of epilepsy? A. Well, I told him this—Now, after—I said—It could have been after he called the Selective Service Board and he asked them the reason, and then turned to me, and he says, 'How long has these here seizures been carrying on?' and I said, 'Well, they dont amount to anything, but,' I said, 'I have noticed them since I was in high school.'"

This evidence was not contradicted or questioned and appellant's physician was not called nor was his absence explained.

In my opinion the evidence establishes that the physician, and hence the appellant, was advised long prior to the accident involved in this action of the following facts:

1. That the respondent had been rejected for military service.

2. That he had suffered "seizures" from the time he was in high school.

3. That there was some connection between his rejection and the history of "seizures."

The word "seizure" is defined in Webster's New International Dictionary, second edition, as "a sudden attack, as of a disease; a fit." It seems apparent to me that the word was used in this sense in the evidence quoted above and it therefore appears that at the time when the information was given to Dr. Willson, the appellant received substantially all of the information that the respondent then had regarding his previous and existent physical condition, and appellant should not be permitted to rely upon the previous false statements made by respondent. Since it is established by the record that the respondent was an employee of the appellant and, in the absence of fraud, was entitled to the protection of the Federal Employers' Liability Act and of the Safety Appliance Act, the action of the trial court in taking the issue from the jury was correct and the judgment should be affirmed.