STILL *v.* NORFOLK & WESTERN RAILWAY CO.

No. 48.   Argued October 19, 1961.—Decided November 13, 1961.

*Sidney S. Sachs* argued the cause for petitioner.   With him on the briefs was *Lewis Jacobs.*

*Joseph M. Sanders* argued the cause for respondent. With him on the briefs was *Robert B. Claytor.*

*John J. Naughton* filed a brief for the Brotherhood of Railroad Trainmen, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The Federal Employers' Liability Act[1] requires railroads to pay damages for personal injuries negligently inflicted upon their employees.   The question this case presents is whether a railroad can escape this statutory liability by proving that an employee so injured had obtained his job by making false representations upon which the railroad rightfully relied in hiring him.

---

[1] 45 U. S. C. §§ 51–60.

Petitioner brought this action in a West Virginia state court seeking damages for personal injuries from the respondent Norfolk & Western Railway Company, for which, as of the date of his alleged injuries, he had worked continuously, except for a one-year interruption, for some six years. By special plea, the railroad set up as a defense the contention that petitioner was not "employed" by it within the meaning of the Act [2] and alleged in support of this defense: (1) that petitioner had made false and fraudulent representations in his application for employment with regard to his physical condition and other matters pertinent to his eligibility and capacity to serve as a railroad employee; (2) that petitioner would not have been hired but for these misrepresentations and the fact that they misled the railroad's hiring officials; and (3) that the very physical defects which had been fraudulently concealed from the railroad contributed to the injury upon which petitioner's action is based. Petitioner's demurrer to this plea was overruled and evidence by both parties was presented to a jury. When all the evidence was in, however, the trial court directed the jury to bring in a verdict for the defendant on the ground that

---

[2] "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury *while he is employed by such carrier* in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U. S. C. § 51. (Emphasis supplied.)

the undisputed evidence showed that the railroad had been deceived into hiring petitioner by petitioner's fraudulent misrepresentations as to his health and that these misrepresentations had a "direct causal connection" with the injuries upon which petitioner's action is based.

Throughout the proceedings in the trial court, petitioner contended that no verdict should be directed against him on the grounds, among others: (1) that the allegations of fraud set up in the railroad's special plea were not sufficient in law to state a defense under the Act; and (2) that even if the plea were sufficient in law, it rested upon questions of fact which should be submitted to the jury. On writ of error, the West Virginia Supreme Court of Appeals refused to overturn the trial court's action on either of these two grounds. Though we recognized that the case might possibly be disposed of on the second of these grounds, we granted certiorari to consider the important question raised by petitioner's first ground concerning the proper interpretation, scope and application of the Federal Employers' Liability Act.[3]

The railroad's primary contention, which was accepted as the principal basis of the action of the trial court, is that the sufficiency in law of its fraud defense was established by this Court's decision in *Minneapolis, St. Paul & S. Ste. Marie R. Co.* v. *Rock.*[4] That case involved the railroad's liability for the negligent injury of one Joe Rock, who had obtained his employment by a whole series of fraudulent misrepresentations. Rock had originally applied for a job in his own name and had been rejected when his physical condition was found to be such that he did not meet the railroad's requirements. Several days later, he reapplied for the same job and, in order to conceal the fact that he had previously been refused employment because of his health, represented himself to be

---

[3] 365 U. S. 877.

[4] 279 U. S. 410.

"John Rock," an apparently fictitious name he assumed for the purpose. He next arranged to have one Lenhart pose as "John Rock" and take the railroad's physical examination. When Lenhart passed the physical, the railroad hired Joe Rock on the mistaken belief that he was "John Rock" and that he had Lenhart's physical condition. On this unusual combination of facts, this Court held that Rock could not recover damages against the railroad under the Federal Employers' Liability Act, saying: "Right to recover may not justify or reasonably be rested on a foundation so abhorrent to public policy." [5]

The railroad here seeks to bring itself within the *Rock* decision by arguing that *Rock* established the principle that any false representation which deceives the employer and results in a railroad worker's getting a job he would not otherwise have obtained is sufficient to bar the worker from recovering the damages Congress has provided for railroad workers negligently injured in the honest performance of their duties under the Federal Employers' Liability Act. Although there is some language in the *Rock* opinion which might lend itself to such an interpretation, we think it plain that no such rule was ever intended. Certainly that was not the contemporaneous understanding of *Rock* among other courts as is plainly shown by the statements of Judge Nordbye when that interpretation of *Rock* was urged upon him only one year later at the trial of *Minneapolis, St. Paul & S. Ste. Marie R. Co.* v. *Borum:* "It is inconceivable to this court that Justice Butler intended to hold in the Rock case that every fraudulent violation of the rules framed for maintaining a certain standard of safety and efficiency of the employees would render such employment void and deny the defrauding employee any rights under the act. It seems quite clear that any fraud practiced by the plaintiff

---

[5] *Id.,* at 415.

herein at the most rendered the contract voidable."[6]
And when the *Borum* case came here, this Court, although
urged to do so, itself refused to extend *Rock* in any such
manner.[7] The decision in *Borum,* considered in the light
of the facts there involved, reflects clearly the contem-
poraneously understood limitations upon the *Rock*
approach and the reluctance of this Court to extend the
vague notions of public policy upon which that case rested
to new factual situations.

Borum, who was forty-nine at the time, wanted a job
with a railroad that had, in the interest of promoting
safety and efficiency in its operations, adopted a rule
against hiring men over forty-five. Knowing this, he
told the railroad employment officials that he was only
thirty-eight and, by this deliberate misrepresentation,
obtained a job he would not otherwise have been given.
Although Borum took the railroad's required physical
examination, it apparently knew nothing of Borum's
deception about his age until some seven years later, after
he had lost both of his legs in an accident caused by the
railroad's negligence and had filed suit against it for dam-
ages under the Federal Employers' Liability Act. Just
before trial of this case, a last-minute investigation turned
up Borum's real age and the railroad sought to rely upon
this fact to escape its liability under the Act. This
Court unanimously upheld the Minnesota courts' deter-
mination that Borum had a right to recover despite his
admittedly fraudulent and material misrepresentation

---

[6] Judge Nordbye's opinion is not reported but appears in the record
in the *Borum* case certified to this Court. See also *Qualls* v. *Atchison,
Topeka & Santa Fe R. Co.,* 112 Cal. App. 7, 17, 296 P. 645, 650:
"This case [Rock] may be reasonably distinguished from the case at
bar. In the Rock case the plaintiff was never really employed by the
company. In the present case the plaintiff was employed." But cf.
*Fort Worth & Denver City R. Co.* v. *Griffith,* 27 S. W. 2d 351, 354.
[7] 286 U. S. 447.

of his age, brushing aside the railroad's attempted reliance upon *Rock* on the ground "that the facts found, when taken in connection with those shown by uncontradicted evidence, are not sufficient to bring this case within the rule applied in *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Rock, supra,* or the reasons upon which that decision rests." [8]

In support of this conclusion, the Court in *Borum* pointed to a number of factual differences with the *Rock* case. The first mentioned, and apparently the most important of these in the mind of the Court, was the fact that Rock, unlike Borum, had obtained his employment as an "impostor" by presenting himself to the railroad under an assumed name after his initial application in his own name had been rejected. Secondly, the Court pointed to the fact that Rock, again unlike Borum, had never been approved as physically fit for employment by the railroad's examining surgeon. Finally, the Court made reference to the fact that under the railroad's own rules, it could not have discharged Borum for his misrepresentation because more than thirty days had passed since his original provisional employment and the rules made this action final unless changed within that period. But no one of these facts, as the Court recognized, was sufficient to justify a distinction between *Rock* and *Borum* based upon an acceptable reconciling principle. In both cases, the worker had been guilty of making a material, false and fraudulent representation without which he would not have been employed. And if such a method of obtaining employment was, as intimated in *Rock*, to be considered so "abhorrent to public policy" that the normal distinction between "void" and "voidable" contracts was to be ignored,[9] the mere existence of a rail-

---

[8] *Id.,* at 451.

[9] "The general rule is that fraud of this character renders a contract voidable rather than void, but that rule has been ignored in the Rock

road rule limiting the time for discharge without cause could not, of course, have overridden that policy. The Court therefore, as shown above, based its decision upholding Borum's right to recover upon all of the factual distinctions between his case and that of Rock and held merely that *Rock* would not be extended to cover these new facts.

This factual distinction of *Rock*, though sufficient to show the non-existence of any broad principle that material misrepresentations relied upon by a railroad in hiring bar recovery under the Act, proved completely unsatisfactory to establish affirmatively an intelligible guide by which lower courts could decide what misrepresentations were so "abhorrent to public policy" as to compel a forfeiture of the worker's right to recover under the Federal Employers' Liability Act. And since *Borum,* the lower federal courts and state courts have been forced to struggle with the baffling problem of how much and what kinds of fraud are sufficiently abhorrent without further guidance from this Court. Consequently, in almost all of such cases, the courts have been faced with a dilemma occasioned by the fact that both parties have been able to argue with considerable force that a decision in their favor is absolutely required by one or the other of the two decisions on the question by this Court. The result in a vast majority of these courts has been an acceptance of *Rock* as laying down a narrow public policy holding to which *Borum* establishes the need for courts to make broad exceptions in appropriate cases. And, perhaps not so surprisingly, most cases have been deemed appropriate ones for avoiding the harsh consequences of *Rock,* with the

Case by the Supreme Court upon the ground that the safety of the traveling public is involved in a contract of this character, and for reasons of public policy it is held that the contract is void and, in effect, that appellee never became an employee of the appellant." *Fort Worth & Denver City R. Co.* v. *Griffith,* 27 S. W. 2d 351, 354.

courts creating new exceptions to allow recovery whenever a case did not fit within one already established.[10] Occasionally, as here, a worker has been held to be barred from recovery, but these few cases seem entirely

---

[10] See, e. g., Qualls v. Atchison, Topeka & Santa Fe R. Co., 112 Cal. App. 7, 17, 296 P. 645, 650 (misrepresentations as to past employment record held "immaterial"); Powers v. Michigan Central R. Co., 268 Ill. App. 493, 498 (misrepresentations as to age and past employment record held insufficient to justify application of Rock because Rock "involved an unusual state of facts"); Dawson v. Texas & Pacific R. Co., 123 Tex. 191, 196, 70 S. W. 2d 392, 394 (misrepresentations as to past employment record and medical history held no bar because they were "in nowise connected with the cause of his injury and not related to his fitness or his ability to discharge the duties required of him"); Texas & New Orleans R. Co. v. Webster, 123 Tex. 197, 201, 70 S. W. 2d 394, 396 (misrepresentations as to previous injury and litigation arising out of that injury held no bar because "it was not shown that his physical condition was such as to make his employment inconsistent with plaintiff in error's proper policy or its reasonable rules to insure discharge of its duty to select fit employees"); Carter v. Peoria & Pekin Union R. Co., 275 Ill. App. 298, 303–304 (misrepresentations as to medical history held no bar because there was no "evidence to the effect that this former injury in any way disqualified or prevented appellant from properly performing his duties as switchman"); Phillips v. Southern Pacific Co., 14 Cal. App. 2d 454, 457, 58 P. 2d 688, 690 (misrepresentations as to past employment record held no bar even though facilitated by the use of an assumed name because there was no showing of "a causal connection between the injury and the misstatements in the application for employment"); Laughter v. Powell, 219 N. C. 689, 698, 14 S. E. 2d 826, 832 (misrepresentations as to age held no bar because there was, despite these misrepresentations, "a contract of employment, even though voidable, by which the relation of master and servant, or employer and employee, was created between defendants and plaintiff"); Newkirk v. Los Angeles Junction R. Co., 21 Cal. 2d 308, 320, 131 P. 2d 535, 543 (misrepresentations as to age held no bar because "[w]here employment is induced by fraudulent representations of the employee not going to the factum of the contract the employment exists although there may be ground for rescinding the contract, and recovery may be had from the employer for negligent injury to the employee at least where there is no causal connection between the

indistinguishable on any significant grounds from the many in which other courts have found or created exceptions.[11]

In this situation, it seems necessary for this Court, in the interest of the orderly administration of justice, to take a fresh look at this question in an effort to supply

injury and the misrepresentation"); *Matthews* v. *Atchison, Topeka & Santa Fe R. Co.,* 54 Cal. App. 2d 549, 556, 129 P. 2d 435, 441 (misrepresentations as to age and past employment record held no bar even though these misrepresentations were facilitated by the use of an assumed name and even though they may have contributed to the worker's injury because the rule requiring " 'a causal connection between the injury and the misstatements' refers to the happening of the injury, not to its effects"); *Blanton* v. *Northern Pacific R. Co.,* 215 Minn. 442, 446, 10 N. W. 2d 382, 384 (misrepresentations as to medical history and physical condition held no bar because "the jury could have found that there was no causal connection between the misrepresentation and plaintiff's hurt"); *Casso* v. *Pennsylvania R. Co.,* 219 F. 2d 303, 305 (misrepresentations as to medical history and physical condition held no bar because the misrepresentations were not "of such character that it 'substantially affected the examining surgeon's conclusion that he was in good health and acceptable physical condition' "); *Eresafe* v. *New York, New Haven & Hartford R. Co.,* 250 F. 2d 619, 621–622 (misrepresentations as to identity, medical history and physical condition held no bar because "[a] humane and realistic policy in such cases requires substantial proof of a direct causal connection between the misrepresentations made at the time of hiring and the subsequent injury to the employee"); *White* v. *Thompson,* 181 Kan. 485, 497–498, 312 P. 2d 612, 621 (misrepresentations as to medical history and physical condition held no bar because "it is not alleged the misrepresentations had causal relation to plaintiff's fitness to perform his duties and to the injuries he sustained, or that they substantially affected the medical examiner's conclusion that plaintiff was in good health and acceptable physical condition, or that defendant remained unaware of the deception until after plaintiff's injuries").

[11] Only four cases have been brought to the attention of this Court in which the railroad has been permitted to prevail on an issue raised by the defense of fraudulent procurement of employment. One of these, *Fort Worth & Denver City R. Co.* v. *Griffith,* 27 S. W. 2d 351,

an intelligible guide for future decisions. Having done so, we conclude that the *Rock* case, properly interpreted, lays down no general rule at all. In that case, the Court was confronted with an action by a railroad worker who, though undeniably an employee of the railroad in any practical or legal sense, had obtained his employment in what was deemed to be such an outrageous manner that it seemed to the Court at that time to be "abhorrent to public policy" to permit him to recover under the Act Congress had passed.[12] There is no occasion for us here to reconsider the correctness of that decision on the basis of the peculiar combination of facts involved in that case, for no such facts are involved here and, indeed, they may never arise again. We do conclude, however, that *Rock* must be limited to its precise facts. In the face of the legislative policy embodied in the Federal Employers' Liability Act that a railroad should pay damages to its workers and their families for personal injuries inflicted by the railroad's negligence upon those who perform its duties, considerations of public policy of the general kind

---

was decided before *Borum* by a court which felt itself entirely bound by *Rock:* "In deference to the holding of the Supreme Court of the United States, which we feel constrained to follow, the judgment is reversed and is here rendered for the appellant." *Id.*, at 354. The other three are: *Clark* v. *Union Pacific R. Co.*, 70 Idaho 70, 211 P. 2d 402 (judgment for plaintiff reversed for failure to instruct the jury with regard to the railroad's fraud defense); *Southern Pac. Co.* v. *Libbey*, 199 F. 2d 341 (judgment for plaintiff reversed for exclusion of evidence relating to railroad's fraud defense); and *Talarowski* v. *Pennsylvania R. Co.*, 135 F. Supp. 503 (motion to strike the railroad's fraud defense denied). All four of these cases involved misrepresentations as to the worker's physical condition. Compare these cases with those cited in note 10, *supra*, especially with *Blanton* v. *Northern Pacific R. Co.*; *Casso* v. *Pennsylvania R. Co.*; *Eresafe* v. *New York, New Haven & Hartford R. Co.*; and *White* v. *Thompson*.

[12] For contemporaneous comment on the *Rock* decision, see Merrill, Misrepresentation to Secure Employment, 14 Minn. L. Rev. 646; Comment, 43 Harv. L. Rev. 141; Comment, 28 Mich. L. Rev. 357.

relied upon by the Court in *Rock* cannot be permitted to encroach further upon the special policy expressed by Congress in the Act. To facilitate this congressional policy, the terms "employed" and "employee" as used in the Act must, in all cases not involving the precise kind of fraud involved in *Rock,* be interpreted according to their ordinary meaning, and the status of employees who become such through other kinds of fraud, although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the Act. And this conclusion is not affected by the fact that an employee's misrepresentation may have, as is urged here, contributed to the injury or even to the accident upon which his action is based. This argument, which seems to have gained its popularity primarily as an exception by which the application of *Rock* could be avoided,[13] suggests that a railroad worker may be partially "employed" under the Act—that he may be able to recover for some injuries negligently inflicted upon him by the railroad and not be able to recover for others so inflicted, depending upon the circumstances of each particular injury. Even if this suggestion recommended itself to reason—which, other than as an exception to the broad

---

[13] "A humane and realistic policy in such cases requires substantial proof of a direct causal connection between the misrepresentations made at the time of hiring and the subsequent injury to the employee, before any defense of fraud can be considered as a bar to a recovery." *Eresafe* v. *New York, New Haven & Hartford R. Co.,* 250 F. 2d 619, 621–622. Mention of a requirement of direct causal connection between the misrepresentations and the injury can be found in cases prior to *Rock,* but there too the requirement was used to permit recovery despite fraud. See, *e. g., St. Louis & San Francisco R. Co.* v. *Brantley,* 168 Ala. 579, 588, 53 So. 305, 307; *Lupher* v. *Atchison, Topeka & Santa Fe R. Co.,* 81 Kan. 585, 589, 106 P. 284, 286; *Galveston, Harrisburg & San Antonio R. Co.* v. *Harris,* 48 Tex. Civ. App. 434, 437, 107 S. W. 108, 110; *Louisville & Nashville R. Co.* v. *Lewis,* 218 Ky. 197, 205, 291 S. W. 401, 404.

principle mistakenly drawn from *Rock,* it plainly does not—we would not be free to accept it.   For it finds no support at all in the history, purpose or language of the Act which provides recovery for any "injury or death resulting in whole or in part from the negligence of" the railroad [14] and there is no prior authority of this Court which requires or even permits us to disregard or impair this controlling declaration of public policy.[15]

The petitioner in this case was an employee under the Act and is therefore entitled to recover if he suffered injuries due to the railroad's negligence.   It was therefore error to direct a verdict against him on the railroad's plea of fraud.   The case is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER, concurring in a judgment for a new trial.

The issue before the Court in this case is not the sufficiency of the evidence to sustain a verdict for or against an employee claiming recovery for injuries under the Federal Employers' Liability Act, 45 U. S. C. §§ 51–58.

---

[14] We do not, of course, mean to intimate that, in appropriate circumstances, evidence of a pre-existing physical defect might not be relevant on the issue of whether the injury complained of was caused by the railroad's negligence "in whole or in part" by tending to show either that the worker was not injured by the railroad at all, that, if injured, the railroad was not responsible for the full extent of the injury, or that damages should be diminished by the jury because of contributory negligence.

[15] Indeed, if the decisions of this Court can be said to point in either direction, it is toward the conclusion that a causal connection between the injury and the misrepresentations is totally irrelevant.   For, as this Court expressly recognized, there was no such connection in *Rock.* "While his [Rock's] physical condition was not a cause of his injuries, it did have direct relation to the propriety of admitting him to such employment."   279 U. S., at 415.

It presents the question whether a misrepresentation by the petitioner regarding his health at the time the railroad hired him, bars recovery as a matter of law in view of our decision in *Minneapolis, St. P. & S. Ste. M. R. Co.* v. *Rock,* 279 U. S. 410. That decision held the statutory remedies unavailable because, as its author pithily stated it on two occasions, Rock "was an impostor." 279 U. S., at 412; *Minneapolis, St. P. & S. Ste. M. R. Co.* v. *Borum,* 286 U. S. 447, 450.

The Court does not now overrule *Rock* but says that it "must be limited to its precise facts." I take it this statement refers to the facts relevant to the result in that case; it does not mean that the plaintiff must be named Rock.

The scope of the *Rock* decision was defined in *Borum,* a case on which the Court's opinion now relies. The latter case came before this Court for review of the state court's refusal to set aside an arbitral finding that the plaintiff had been an employee. The judgment was affirmed on the basis that the evidence did not require a finding that deceit in obtaining employment had materially prejudiced the employer's efforts to select fit employees. The Court did not hold that the question of fraud in obtaining employment was improperly submitted to the trier of fact.

I would similarly dispose of this case; that is, upon a new trial the issue should not be withdrawn from the jury but submitted to it on the principle which governed the *Borum* case, *supra.*

MR. JUSTICE WHITTAKER, dissenting.

Claiming to have suffered injuries to his back by the negligence of fellow servants in the course of his employment by the respondent railroad in interstate commerce, petitioner brought this action against the railroad in a West Virginia court under the beneficent provisions of the Federal Employers' Liability Act. 45 U. S. C. §§ 51–58.

But application of the provisions of that Act is, in terms, made to depend upon, among other things, the existence of an employee status. At the conclusion of the evidence offered on the trial of the case before a jury, the railroad moved for a directed verdict upon the ground, among others, that petitioner did not occupy an employee status with the railroad. Believing that the undisputed evidence so clearly established that petitioner had procured his putative employment relation with the railroad by materially fraudulent misrepresentations to, and concealments from, the railroad and its examining physician of his now admitted congenitally defective back condition that reasonable men could not differ about it, the trial court granted the motion and directed the jury to, and it did, return a verdict for the railroad. The Supreme Court of Appeals of West Virginia declined to review, and we granted certiorari. 365 U. S. 877.

This Court now not only reverses that judgment, but it also—I think quite gratuitously and erroneously—restricts the case of *Minneapolis, St. P. & S. Ste. M. R. Co.* v. *Rock,* 279 U. S. 410, "to its precise facts." While the undisputed evidence of petitioner's fraud upon the railroad in procuring the putative employment relationship seems fairly clear to me, as it did to the two state courts, I concede that reasonable men may differ about it; and therefore, if we must here deal with such fact issues, I am able to say that the issue should not have been determined by the court as a matter of law, but instead should have been submitted to the jury for resolution. But I am unable to agree to what I think is the Court's gratuitous and erroneous restriction of the *Rock* case "to its precise facts," and so I dissent.

The question is not whether one who has obtained an employee status with a railroad by a flagrant fraud may maintain an action to recover for injuries willfully or negligently inflicted upon him under, and subject to the

conditions and defenses imposed by, the laws of the State in which the casualty occurred. Of course he may. His fraud, however flagrant, would not give the railroad a license to injure him. Rather the question is whether, despite his flagrant fraud in procuring the employee status, he may have the special benefits, and freedom from the normal defenses, given by Congress in the Federal Employers' Liability Act to one who has honestly acquired the status of and is truly an employee of a railroad. I think Congress did not intend to give those special benefits to a person who has acquired a putative employment relationship with a railroad by flagrant fraud, whether that fraud falls within the "precise facts" of the *Rock* case or within any of the myriad variations thereof.

While the fraud that induced the putative employment relationship in the *Rock* case was so clear that this Court was able to and did determine the question as one of law, and the somewhat less compelling evidence of fraud in this case does not legally require a like result, that case does stand for the age-old and sound proposition that fraud in the inducement of a contract vitiates the contract. I cannot agree to a repudiation of that principle.

Irrespective of its legally clear fraudulent facts, the fundamental issue in the *Rock* case was "whether, notwithstanding the means by which he got employment . . . [, petitioner] may maintain an action under the Federal Employers' Liability Act." 279 U. S., at 413. The same principle is involved here. Today, much as at the time of the *Rock* case, that "Act abrogates the fellow-servant rule [and] restricts the defenses of contributory negligence and assumption of risk," *id.*, at 413, yet here, as there, petitioner "in this action seeks, in virtue of its provisions and despite the rules of the common law, to hold [the railroad] liable for negligence of his fellow servants and notwithstanding his own negligence may have con-

tributed to cause his injuries." *Ibid.* Quite explicitly, Congress conferred the special remedies of that Act only upon those who occupy the status of employee. Surely that status, within the meaning of the Act, cannot be created by flagrant fraud, whether that fraud does or does not fall within the "precise facts" of the *Rock* case. Today, no less than at the time of the *Rock* case, "[t]he carriers owe a duty to their patrons [and to the public] as well as to those engaged in the operation of their railroads to take care . . . to exclude the unfit from their service. The enforcement of the Act is calculated to stimulate them to proper performance of that duty." 279 U. S., at 413–414. One who fraudulently obstructs the discharge of that duty surely cannot be permitted to profit from his own wrong. These are the underlying principles of the *Rock* case, and I submit that they are sound.

Even though the evidence of petitioner's fraud in procuring the putative employment relationship here may not be sufficiently clear to enable the Court to declare it as a matter of law, and hence the issue must be submitted to the jury, surely the jury could find, on proper and sufficient evidence, that petitioner procured the putative employment relationship by fraud; and, since fraud in the inducement of the contract vitiates the contract, such a finding would establish that petitioner never, in truth, acquired the employment status which Congress intended to protect by the extraordinary provisions of the Act. Otherwise, "[t]he deception by which [petitioner may have] secured employment [would] set at naught the carrier's reasonable rule and practice established to promote the safety of [the public, its patrons and its] employees and to protect commerce." Such fraud would directly oppose "the public interest because calculated to embarrass and hinder the carrier in the performance of

its duties and to defeat important purposes sought to be advanced by the Act." 279 U. S., at 414.

Only a fair measure of simple honesty is involved. Surely, Congress contemplated and expected that such would be necessary to create the status it was surrounding with these extraordinary rights.

Although the principles of the *Rock* case do not legally require a like result in this case, they properly do permit a jury, rightly instructed, to find, upon the aggravated evidence that so warrants, that the putative employment was induced by fraud. And if the jury should so find, it would follow that, in truth, the petitioner never did acquire and occupy an employee status within the meaning of the Act. This is but a simple application of the surely still valid principle that one may not profit from his own wrong. I think there is no call or reason here to tamper with the sound underlying principles of the *Rock* case.